THOMAS CAHILL, Respondent, *v.* HENRY HILTON, et al., Appellants.

To authorize a recovery in an action by a servant against his master for injuries received by the former in the course of his employment, the evidence must establish personal fault on the part of the master, or, what is equivalent thereto; and he is entitled to the benefit of the presumption that he has performed his duty, until the contrary is shown.

So, also, the plaintiff is required to show affirmatively his own freedom from negligence; and while this is usually a question of fact and the absence of contributory negligence is often to be inferred from the nature of the accident and the circumstances of the case, that conclusion cannot legally be reached, unless such circumstances are proved as legitimately and reasonably lead to such a result; and if the facts proved do not fairly tend to support a presumption of freedom from negligence, the question becomes one of law for the court.

In an action to recover damages for personal injuries alleged to have been caused by defendants' negligence, the following facts appeared: Plaintiff was employed as general helper in the gig room of defendants' carpet factory. The superintendent and the foreman of the factory had been expressly directed by the defendants not to allow the machinery to be repaired while in motion. The gigs were operated by leather belts running over drums or pulleys. One of the belts, the laces of which had become loose, had been thrown off the gig-wheel and was dangling from the shaft overhead. Plaintiff was requested by a fellow-workman to place the belt upon nails driven near the shaft for the purpose of stopping its revolution so that it could be relaced. A ladder, which had been in general use about the factory for a number of years, was, at the time, fastened by hooks to a scantling, and was so situated as to enable plaintiff to reach the belt from it. He testified that he ascended the ladder, placed his right arm around a beam near his head, seized the belt with his left hand and attempted to lift it to throw it over the nails when he became unconscious. The belt was revolving toward him and downward. Plaintiff was found lying unconscious upon the floor at the foot of the ladder, the ladder and the scantling were broken and lay in pieces on the floor, around and partly upon him. Plaintiff's left arm was severed from the body and was found lying on the floor from six to ten feet from it and back of the shaft. There was no necessity for lacing the belts while the machinery was in motion; it had been at rest during the noon intermission and the accident happened immediately after it had again been put in motion. Plaintiff admitted that he had frequently performed this service before and always in the same manner, and that he knew it to be a hazardous undertaking. The claim of negligence was that the ladder was defective; there was no proof that defendants were aware that it was used for such a purpose. *Held,* the evidence clearly showed the injury did not result from any defect in the ladder; but if so, plaintiff alone was chargeable with negligence in electing to perform the service in a way known by him to be dangerous, rather than adopt the precautions which would have made it entirely safe.

(Argued June 10, 1887; decided October 4, 1887.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made May 11, 1885, which affirmed a judgment in favor of plaintiff entered upon a verdict and affirmed an order denying a motion for a new trial.

This action was brought to recover damages for personal

injuries alleged to have been caused by defendant's negligence. The material facts are stated in the opinion.

*Frank B. Lown* for appellants. It is no answer to plaintiff's negligent or careless act to say that he was ordered to do it by Broderick, the foreman, who was a fellow-servant of the plaintiff, and for his negligence the defendants are not liable. (*Crispin* v. *Babbitt*, 81 N. Y. 516 ; *Slater* v. *Jewett*, 85 id. 61 ; *McCosker* v. *L. I. C. R. R. Co.*, 84 id. 77 ; *Olson* v. *Clyde*, 32 Hun, 425 ; *White* v. *Sharp*, 27 id. 96.) The judgment cannot be supported on the ground that the defective ladder caused the accident. (*Marsh* v. *Chickering*, 101 N. Y. 396 ; *Davies* v. *Detroit & Mich. R. R. Co.*, 20 Mich. 185 ; *Baker* v. *Alleghany R. R. Co.*, 23 Alb. L. J. 96 ; *Ballou* v. *Chic. & N. W. R. R. Co.*, 26 id. 137.) A master does not engage that his appliances will continue in good and safe condition. (*Baker* v. *A. V. R. R. Co.*, 23 Alb. L. J. 96 ; *White* v. *Sharp*, 27 Hun, 97.) The cause of the injury to plaintiff was left in such doubt that a verdict in his favor could not be sustained. (*Searles* v. *Manhattan R. Co.*, 101 N. Y. 661.) *Hart* v. *H. R. Bridge Co.*, 84 id. 56.) A servant is chargeable with knowledge of a dangerous structure or machine if he could have known of it by the exercise of reasonable care and observation. (*Hickey* v. *Taffe*, 105 N. Y. 26 ; *Gibson* v. *E. R. Co.*, 63 id. 449 ; *De Forest* v. *Jewett*, 88 id. 268 ; *Kelly* v. *Silver Springs Co.*, 18 Alb. L. J. 354 ; *Jones* v. *Roach*, 9 J. & S. 248 ; *Brossman* v. *L. V. R. R. Co.*, 10 East. Rep. 262 ; *Wonder* v. *B. & O. R. R. Co.*, 5 Alb. L. J. 187 ; 3 Am. Rep. 143 ; *Ballou* v. *Chic. & N. W. R. R. Co.*, 26 Alb. L. J. 137 ; *Baker* v. *Alleghany R. R. Co.*, 23 id. 96.)

*Austen G. Fox* for respondent. There was sufficient evidence to support the finding by the jury that the defendants were guilty of negligence. (*Ellis* v. *N. Y., L. E. & W. R. R. Co.*, 95 N. Y. 546 ; *Kain* v. *Smith*, 89 id. 375 ; *Painton* v. *N. C. R. R. Co.*, 83 id. 7 ; *Spicer* v. *S. Bost. Ice Co*, 138 Mass. 426 ; *Murphy* v. *Phillips*, 35 L. Times, 477 ; *Covey* v. *H. & St. Jo. R. Co.*, 86 Mo. 635 ; *Ryan* v. *Miller*, 17

Week. Dig. 112; *Baker* v. *A. V. R. R. Co.*, 95 Penn. St.
211; *Ryan* v. *Fowler*, 24 N. Y. 410; *Hough* v. *R. Co.*,
100 U. S. 213; *Jones* v. *N. Y. C. & H. R. R. R. Co.*, 92
N. Y. 628; 28 Hun, 364; *Rooney* v. *Com. Gen. Transp.*, 10
Daly, 241; *Heaven* v. *Pender*, 11 Q. B. D. 503; *Heske* v.
*Samuelson*, 12 id. 30; *Bartonshill* v. *Reed*, 3 Macq. H. L.
Cas. 266; *Roberts* v. *Smith*, 2 H. & N. 213; *Laning* v.
*N. Y. C. R. R. Co.*, 49 N. Y. 521, 533; *Buzzell* v. *Laconia
Man. Co.*, 48 Me. 113–117; *Ballou* v. *C. & N. W. R. R. Co.*,
54 Wis. 257; *Behm* v. *Armour*, 58 id. 1; *Marsh* v. *Chicker-
ing*, 101 N. Y. 369.) There was sufficient evidence to sup-
port the finding by the jury that the plaintiff was not guilty
of contributory negligence. (*Hawley* v. *N. C. R. R. Co.*,
82 N. Y. 370; *Kain* v. *Smith*, 89 id. 375; *Connolly* v. *Poil-
lon*, 41 Barb. 366; *Ford* v. *Fitchburg R. R. Co.*, 110 Mass.
240; *McMahon* v. *Pt. H. I. O. Co.*, 24 Hun, 48; *Plank* v.
*N. Y. C. R. R. Co.*, 60 id. 607; *Baker* v. *A. V. R. R. Co.*,
95 Penn. St. 211; *Lawless* v. *Conn. R. R. Co.*, 136 Mass.
136; Wood on Mast. and Serv. 749, § 376.) The question
whether the breaking of the defective ladder caused the injury,
was not raised on the record, but even if it had been raised,
the evidence was sufficient to support the finding of the jury
that the cause of the accident was the breaking of the defect-
ive ladder. (*Stringham* v. *Stewart*, 100 N. Y. 516; *Rollins*
v. *Farley*, id. 620; *Hart* v. *H. R. B. Co.*, 80 id. 622; *Durkin*
v. *Sharp*, 88 id. 225; *Jones* v. *N. Y. C. & H. R. R. R. Co.*,
92 id. 628; 28 Hun, 364; 10 Abb. [N. C.] 200; *Kain* v.
*Smith*, 89 N. Y. 375; *Ford* v. *Lyons*, 25 Week. Dig. 39.) The
court did not err in refusing to charge either the first or the
sixth request submitted by the defendants having already
substantially charged them. (*Holbrook* v. *Utica & S. R. R.
Co.*, 12 N. Y. 236; *Moett* v. *People*, 85 id. 373, 380; *Mas-
terson* v. *N. Y. C. & H. R. R. R. Co.*, 84 id. 258; *R. Co.*
v. *McCarthy*, 96 U. S. 258; *Wabash R. Co.* v. *McDaniels*,
107 id. 462.) The knowledge on the part of a servant that
shows negligence, as matter of law, is not the mere knowledge
of defects, but of the risks or dangers arising therefrom, for,

" a servant knowing the facts may be utterly ignorant of the risks." (*Kain* v. *Smith*, 89 N. Y. 375; *McMahon* v. *Port Henry I. O. Co.*, 24 Hun, 48; *Ford* v. *Fitchburgh R. R. Co.*, 110 Mass. 240; *Hawley* v. *N. C. R. R. Co.*, 82 N. Y. 372; *Plank* v. *N. Y. C. R. R. Co.*, 60 id. 607; *Baker* v. *A. V. R. R. Co.*, 95 Penn. St. 211; *Lawless* v. *C. R. R. R. Co.*, 136 Mass. 1; *De Forest* v. *Jewett*, 88 N. Y. 269.) The court did not err in refusing to charge " that if the plaintiff had equal opportunity with the defendants to know of the condition of the ladder, then he cannot recover." (Wood on Mast. and Serv. § 376; *Wilson* v. *Wil. Linen Co.*, 50 Conn. 469.)

Ruger, Ch. J. The accident by which the plaintiff lost an arm and seriously impaired his means of livelihood, was one which appeals strongly to the sympathies, and naturally excites a desire to extend compensation to him for his misfortune. Courts, however; are powerless to render relief in such cases unless the consequences can be traced with certainty to the negligence of the parties charged therewith, unconnected with contributory fault on the part of the injured party.

Persons engaged in the use of machinery employed in the various manufacturing industries of the country, and usually propelled by irresistible power, are necessarily exposed to great danger, and must mainly rely for immunity from injuries therefrom, upon their own care and vigilance. It is undoubtedly the duty of the master employing servants in such establishments, to exercise all reasonable care and prudence to obviate the dangers naturally arising from the employment, but there must remain many dangerous situations which cannot be anticipated or provided for, and from which the utmost care of the employer will be insufficient to protect his servants, and especially those who are careless or inattentive in the performance of their duties. Even when the employer is held to the strictest degree of accountability, there must necessarily be cases when accidents occur that are beyond the reach of any possible prevision, and are chargeable solely to the

risks incident to the nature of the employment, or the fault of the person injured. This seems to have been such a case. A master's liability to his servants for injuries received in the course of his employment is based upon the personal negligence of the employer; and the evidence must establish personal fault on his part, or, what is equivalent thereto, to justify a verdict, and he is entitled to the benefit of the presumption that he has performed his duty until the contrary appears. (Wood on Master and Servant, §§ 345, 346.)

An examination of the evidence in this case does not, in our view, disclose any neglect on the defendants' part, but seems to prove that the accident was occasioned by plaintiff's want of care. The defendants were the owners of a carpet factory at Glenham, in this State, and the plaintiff had been in their employ about four years as a general helper in the gig-room where the accident occurred. The plaintiff was the only witness of the transaction and was entirely unable to give any account of the manner of its occurrence. The courts below have sustained a recovery against the defendants solely upon the ground that they were guilty of negligence in furnishing for use in their factory, a ladder alleged to have been defective in some of its parts, and which the plaintiff was using at the time of his injury, in attempting to shift a belt upon a shaft for the purpose of relacing it. There was no necessity for relacing these belts while the machinery was in motion, and no proof that the ladder was furnished for the purpose to which plaintiff put it, or that the defendants were aware of the manner in which he intended to use it. On the contrary, the superintendent and foreman of the factory had been expressly directed by the defendants not to allow the machinery to be repaired while in motion, and they both testified that they should have prevented it if the mode of doing it by the plaintiff had been brought to their attention. The ladder was about twelve feet long and had been provided for no special purpose, but had been used some fifteen years about the factory for the ordinary uses of such a ladder. The plaintiff testified that he and his fellow-servants had been in the

habit, during the four years he worked in the factory, of relacing the belts in the gig-room while the machinery was in motion as often as once in every two or three months, but knowledge of this practice had not come to the notice of the defendant.

The evidence of the defects in the ladder was furnished mainly by the plaintiff's co-servants, and they were evidently aware of the difficulty of the problem their evidence was designed to elucidate, viz., to show that the defects were so apparent that the defendants were chargeable with negligence for not observing them, but that they were also so obscure that the plaintiff, who was in the frequent use of the ladder, was excusable in not seeing them. The plaintiff's means of discovering these defects, if there were any, were quite equal to those of any of his witnesses, but the jury were permitted to find, upon such evidence, that the defendants were chargeable with negligence for not discovering and remedying them, and that the plaintiff, with superior means of observation, was ignorant of their existence.

It is difficult to see upon what principle of logic or reason such a verdict can be supported. A ladder, like a spade or hoe, is an implement of simple structure, presenting no complicated question of power, motion or construction, and intelligible in all of its parts to the dullest intellect. No reason can be perceived why the plaintiff, brought into daily contact with the tools used by him, as he was, should not be held chargeable, equally with the defendants, with knowledge of their imperfections. (*Marsh* v. *Chickering*, 101 N. Y. 396.)

We do not, however, care to rest the decision of the case upon this proposition, as we are, after a careful consideration of the whole evidence, of the opinion that the ladder was not instrumental in producing the accident; and that even if it was, the mode and time of its use were not attributable to the defendants. The evidence upon which our opinion is based was undisputed, and when carefully analyzed leaves no room for doubt as to the manner of the accident, or at least that it was not occasioned by the breaking of the ladder. The gig room was mainly occupied by gigs located upon the

floor and operated by leather belts running over drums or pulleys on a main shaft extending through the room near the ceiling and passing around other drums or pulleys attached to the gigs, thus communicating power to them. The machinery on the floor was covered up and offered no apparent opportunity for injury therefrom, even to those who should be brought in contact with it. Upon this occasion the plaintiff was requested by a fellow-servant to place one of the belts upon nails driven into scantling near the shaft for the purpose of stopping its revolution and enabling it to be relaced. This belt was a plain, smooth band of leather, about six inches wide, and made to form a circle by having its two ends brought together and laced with a leather string. These laces occasionally became loose or broken and had to be relaced or refastened. The plaintiff went alone to the place of the accident and found the belt thrown off the gig wheel and dangling from the shaft above, around which it was revolving with considerable velocity. He found the ladder fastened by hooks to a scantling near the ceiling, so placed as to enable him easily to reach the hanging belt with his left hand and to throw it upon the nails. He ascended the ladder and placed his right arm around a beam near his head, giving him a secure position, and seized the belt with his left hand and attempted to lift it, but failed. He made a second attempt, but before he could throw it over the nails became unconscious and recollected nothing further

The belt was revolving toward him and downward as he stood on the ladder, and would naturally carry him with it in case he became entangled in it, and his hold upon the beam above became released. He admitted that he had frequently performed this service before and always in the same manner and with the same ladder, and that he knew it to be a hazardous undertaking. Another witness, who worked in the same room, testified that he heard a crash, and upon investigation found the plaintiff lying upon the floor at the foot of the ladder in front of the shaft, and unconscious. The ladder and the scantling to which it was hooked, were broken and

lay in pieces on the floor around and partly upon the plaintiff. The left side of the ladder was broken and some of the rounds were pulled out and also broken. The plaintiff's left arm had been severed from the body near the shoulder and lay on the floor, back of the shaft and from six to ten feet from his body. In the absence of any direct evidence of the manner in which the accident occurred we are left wholly to conjecture to account for its cause. We can see nothing in the circumstances of the case which tends to impose upon the defendants the charge of a want of due and proper care. There was nothing about this machinery which was dangerous in itself and no injury could reasonably be apprehended from it unless a person voluntarily placed himself within its range. The defendants had no reason to suppose that their servants would expose themselves unnecessarily to a danger that was so apparent to observation. The plaintiff's theory of the accident is that the ladder broke on account of its defective material and precipitated him upon the belt, thus causing his entanglement therein. This theory is not only improbable and unnatural, but is contradicted by every reasonable inference to be drawn from the known circumstances of the case. It does not account for the fact of the broken scantling to which the ladder was fastened, nor the respective positions of the body and the arm after the accident, nor even for the breaking of the arm. The position in which the body was found is irreconcilable with the theory that the broken ladder was the cause, and clearly demonstrates that it was the consequence only of the accident. The body seems to have fallen in accordance with the law of gravitation, and appeared to be unaffected in its fall by any exterior force. It is only upon the theory that the arm was broken off while the body still remained upon the ladder suspended from the beam around which the right arm was thrown, that the relative positions of the arm and body can be accounted for. There is not only no evidence that his body caught or was thrown into the belt, but the most conclusive presumption arises from its position and the nature of the belt, that it was not brought

into contact with the belt at all. His own evidence placed him upon the ladder in the act of grasping a revolving belt having laces with loosened ends attached to it thus affording the only apparent means of creating any entanglement. Thus a probable and natural mode of accounting for the accident was furnished by the proof, but, for the purpose of fixing a liability upon the defendants, the jury were allowed to speculate upon the possibilities of the case, without any evidence to support the theory upon which the defendant's liability was predicated. The circumstances show conclusively that his hand alone was caught in the laces, and that the arm, ladder and scantling were all broken by the strain upon them, and the arm pulled off owing to the resistance which his grasp on the beam over his head afforded. This hold was not relaxed until the shock severing the arm had produced unconsciousness, when the body fell to the floor in front of the belt.

The inference is irresistible that the hand became entangled in the belt while he was engaged in the act of lifting it, and that the severance of his arm immediately followed, communicating the shock which produced unconsciousness. If the ladder had broken and caused him to fall, that circumstance must have preceded his unconsciousness, and he would have observed and been able to testify to the fact; but as it was he recollected all that took place up to the time of grasping the belt, but nothing after that. It is quite certain that the arm was severed from the body while he still remained upon the ladder holding to the beam above him for support, because there was no period of time after that when the force exerted upon it would not have carried the body, if undetached, along with it to the other side of the shaft. The force necessary to tear an arm from the body requires resistance as well as power, and can be accounted for in no way except upon the theory that the plaintiff held on to the beam, endeavoring, by main strength, to release his hand from the laces.

The evidence, therefore, does not bring the case within the rule requiring that personal negligence on the part of the employers must be shown in order to authorize a verdict

against them. They not only did not furnish the ladder for the use in which it was employed, but the accident was not attributable to its use.

The rule that a plaintiff in an action for negligence is required to show affirmatively his own freedom from negligence, is quite as well established, as that he must show that it was produced by the negligence of the defendant. It is quite true that the proof of the absence of plaintiff's negligence usually presents a question of fact, and is often to be inferred from the nature of the accident and the circumstances of the case, but this conclusion cannot legally be reached unless such circumstances are proved as legitimately and reasonably lead to such a result. Unless the court can see that such facts are proved as fairly tend to support a presumption of freedom from negligence, the question becomes one of law to be determined by it.

The proof shows that the service in question could have been safely performed while the machinery was at rest during the noon intermission, or upon request the superintendent would have suspended the power for the few minutes required to perform the work. Instead of adopting either of these methods, the plaintiff and his fellow-servant voluntarily selected a time following the noon intermission, and immediately after the machinery had been put in motion, to do the work required of him. He admits that he knew the hazard of this manner of performing the service, but he elected to do it in that way rather than adopt the precautions which would have made it entirely safe. In this we think he took the risk of the time and manner selected by himself and his co-servant.

To hold an employer liable for the consequence of an accident happening under such circumstances, would violate the plainest principles governing the relations of master and servant, and impose upon the former the consequences of the carelessness of the latter. It would substitute a rule imposing an absolute liability upon the master, instead of that just principle which inflicts upon each party the consequences of his own fault.

The judgments of the courts below should be reversed and a new trial ordered, with costs to abide the event.

All concur.

Judgment reversed