HENRY B. DORNEY, Respondent, *v.* HUGH O'NEILL, Appellant.

*Negligence — an employee assumes the risk of walking through a passageway in which baskets are stored — sudden extinguishing of the lights — it must be shown to be due to some fault of the master.*

A servant who continues in the master's employ, knowing that baskets on wheels are generally left standing in a passageway in the master's establishment, through which he is obliged to pass in going from his work, thereby assumes the risk incident to their presence in the passageway, and waives any claim for damages in case he is injured in a collision with one of such baskets.

The fact that the collision occurred at a time when the passageway was in darkness, because for some unexplained reason the electric lights with which the passageway was usually lighted had gone out, will not sustain a recovery by the servant in the absence of evidence establishing that the extinguishing of the lights was due to some personal fault, or the equivalent thereof, upon the part of the master.

O'BRIEN, J., dissented.

APPEAL by the defendant, Hugh O'Neill, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 8th day of January, 1898, upon the verdict of a jury for $3,250, and also from an order entered in said clerk's office on the 7th day of January, 1898, denying the defendant's motion for a new trial made upon the minutes.

*Eugene Lamb Richards, Jr.,* for the appellant.

*Charles Steckler,* for the respondent.

McLAUGHLIN, J.:

This is an appeal from a judgment entered upon the verdict of a jury awarding to the plaintiff $3,250 damages for personal injuries and from an order denying a motion for a new trial.

The plaintiff was an employee of the defendant, and at the time of the accident was working in the basement of the defendant's store. In going to and from his place of work it was necessary for him to walk through a hall or passageway many feet in length and from five to six feet in width. This passageway was lighted by nine incandescent electric lamps placed at intervals along its entire length.

These lamps were operated and controlled by three separate switches; those designated in the evidence 1, 2, 3, 4 and 5 by one switch; 6, 7 and 8 by another; while 9, which was located at the end of the passageway, and about ninety feet from where the plaintiff was injured, was operated by still another. At the close of each day's work a signal was given, by the striking of a bell, for defendant's employees to quit work and leave the building, and when this signal was given, lights 1 to 5 were extinguished, and as soon as the employees had left the building the remaining lights were extinguished, except 9, which was kept burning night and day. On the day of the accident the signal to quit work was given, lights 1 to 5 were extinguished, and the plaintiff started to leave the building, but before he had passed entirely through the passageway all the lights went out, and in attempting to proceed through the darkness he ran into a box or basket on wheels, designated in the evidence a " wheeler," stored in the passageway and sustained a very serious injury.

The recovery obtained by him is attempted to be sustained upon the ground that the defendant was negligent, (1) in storing the " wheelers " in the passageway; and (2) in not having the passageway sufficiently lighted.

It appeared upon the trial, and the fact was not contradicted, that it had been the custom of the defendant during all the time that the plaintiff had been in his employ, which was about two years, to store " wheelers " in the passageway, and that the plaintiff knew it. He, himself, testified that the " wheelers " were generally standing in the passageway every night. The risk, therefore, of walking through the passageway by reason of the " wheelers " being there stored, was one which the plaintiff assumed, since it was incident to his employment. The defendant had the right to use the passageway for such purposes as he saw fit in connection with his business, and if the storage of the " wheelers " there was a source of danger to the plaintiff, and the plaintiff knew of it, by continuing in defendant's service having such knowledge, he also assumed the risk. The rule is well settled that the servant assumes, not only the risk incident to his employment, but also all dangers which are obvious and apparent, and if he enters into or continues in the service, having knowledge of the danger involved, he is in law deemed to assume the risk and to waive any claim for damages in case of injury.

(*Sweeney* v. *Berlin & Jones Envelope Co.*, 101 N. Y. 524; *Hickey* v. *Taaffe*, 105 id. 26; *Crown* v. *Orr*, 140 id. 450; *Knisley* v. *Pratt*, 148 id. 372.)   The recovery cannot be sustained upon this ground, nor do we think it can be sustained upon the ground that the defendant was negligent in not sufficiently lighting the passageway.   It is conceded that the defendant provided, in the first instance, a proper system for lighting the passageway and supplied a sufficient number of lamps for that purpose.   These lamps, so far as appears, had never before failed to accomplish the purpose for which they were intended, and the extinguishment of all of them was in direct violation of defendant's orders.   Lamps 6, 7 and 8 were not to be extinguished until the employees had left the building, while lamp 9 was to be kept burning day and night.   Why were these lamps extinguished on the evening in question?   What caused them to go out?   Was it by reason of the negligence of the defendant or of a co-servant?   Was it due to some defect in the system for which the defendant was liable, or was it due to some agency over which he had no control?   A correct answer to these inquiries cannot be obtained from the record before us.   Before the plaintiff was entitled to recover, it was necessary for him to establish personal fault on the part of the defendant, or what is equivalent thereto, and until he had done that, the defendant was entitled to the benefit of the presumption that he had performed his duty.   (*Cahill* v. *Hilton*, 106 N. Y. 512.)

The accident was an unfortunate one, and the plaintiff was very seriously injured, but this of itself did not entitle him to recover. Before he could do that, it was necessary to establish facts from which it could be fairly said, under well-recognized rules of law, that his injuries were due to some wrongful act, either of omission or commission, of the defendant.

It follows that the judgment must be reversed and a new trial granted, with costs to the defendant to abide the event.

VAN BRUNT, P. J., PATTERSON and INGRAHAM, JJ., concurred; O'BRIEN, J., dissented.

O'BRIEN, J. (dissenting):

I think there was sufficient evidence to carry the question of defendant's negligence to the jury.

The plaintiff was entitled to have the only passage or mode of egress from the building provided for him and the other employees of this large establishment made and kept reasonably safe. That the injuries were caused by the failure to keep the passageway lighted is not in dispute. Having shown, therefore, the master's duty to his employees with respect to the premises, and having presented evidence from which the inference might be drawn that this duty was not observed on the night of the accident, and that he suffered injuries as the result thereof, I think the plaintiff made out a *prima facie* case, and was entitled to go to the jury upon the question of defendant's negligence.

It is not suggested that plaintiff was guilty of contributory negligence, or that the amount of damages awarded was excessive.

I think, therefore, that the verdict should be sustained and the judgment entered thereon affirmed, and dissent from the conclusion reached by the majority of the court.

Judgment reversed, new trial ordered, costs to appellant to abide event.