# THOMPSON-STARRETT COMPANY *v.* WILSON.[*]

---

MASTER AND SERVANT; PLACE OF WORK; LADDER; CONTRIBUTORY NEGLIGENCE; EVIDENCE.

1. A ladder in a fixed position, which the master undertakes to furnish and supervise for use by servants in the construction of a building, is not

---

[*]*Master and Servant.*—For a presentation of authorities upon the question of the duty and liability of the master with respect to tools, see the

a tool, but a place of work, for the unsafe condition of which he cannot escape liability upon the ground that it was negligently adjusted by a fellow servant.

2. A servant who, in attempting his first descent of a fixed ladder which he has ascended but once, steps upon a rung which affords an insecure foothold because of its proximity to a projection slightly below the landing, will not be held guilty of contributory negligence *per se*, where he testifies that he did not notice the condition, and other witnesses state that their knowledge of it was gained by slipping from the rung.

3. A master may, in the absence of countervailing evidence, be found to have undertaken to furnish and supervise a ladder so as to render it a place of work, rather than a tool, where, being securely fastened in a building under construction, it remained in a fixed position for many weeks as the sole means by which his employees of all classes passed from floor to floor. ( Distinguishing *Collins* v. *John W. Danforth Co.* 36 App. D. C. 598.)

No. 2392. Submitted October 10, 1912. Decided November 4, 1912.

HEARING on appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action for damages for personal injuries.          *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment after verdict in the supreme court of the District holding the defendant, Thompson-Starrett Company, appellant here, responsible in damages for personal injuries suffered by the plaintiff, John D. Wilson, appellee here, by reason of an alleged defective condition of a ladder.

---

following editorial notes: Liability of master for injury to servant by defective ladder not forming part of structure, note to *Sheridan* v. *Gorham Mfg. Co.* 13 L.R.A. (N.S.) 687; liability for injury by defect in common tools, notes to *Vanderpool* v. *Partridge*, 13 L.R.A. (N.S.) 668, and *Parker* v. *W. C. Wood Lumber Co.* 40 L.R.A. (N.S.) 832; duty to inspect tools or implements furnished servant, note to *Gulf, C. & S. F. R. Co.* v. *Larkin*, 1 L.R.A. (N.S.) 944; liability of master for injuries caused by splinters flying from hammers or chisels, punches, and other similar tools, note to *L'Houx* v. *Union Constr. Co.* 30 L.R.A. (N.S.) 800.

Plaintiff's declaration is in two counts.  In the first count it is averred that the defendant was engaged in the construction of a building in the Naval Hospital grounds in this city, and that on the 25th of February, 1910, the plaintiff was in its employ as a carpenter and at work upon said building; that it was necessary for him, in the performance of his duties and in obeying the instructions of the defendant, to use a ladder for the purpose of going to and from one floor to another of said building, "there being no other means furnished by said defendant to the plaintiff and its other employees."  It is then averred that it was the duty of the defendant to furnish its employees "a ladder which should be so fixed and placed in position as to be reasonably safe;" that it failed in this duty in that said ladder, which extended from the first to the third floor, was not braced or tied at the point where it passed the second floor of said building, "and also in that it was so fixed or placed at the third-floor landing of said building that one of its rungs or steps afforded an unsafe, unsecure, and dangerous foothold to any one using it for the purpose of ascending or descending as aforesaid."  The manner and extent of the injury are then set forth.

In the second count it is set forth that in the course of plaintiff's employment and in obeying the instructions of the defendant it was necessary "to use a certain ladder which had been furnished by the defendant for the use of the plaintiff and its other employees in the course of the performance by them of their duties in and about the construction of said partially completed building."  The defective condition complained of is then set forth, and other necessary averments follow.

The evidence tended to show that, for many weeks prior to plaintiff's employment by the defendant, the position and condition of the ladder were exactly the same as upon the day of the injury.  There was no dispute that the ladder was securely fastened at the first and third floors by the use of joists laid upon the concrete floors, and by cleats and nails.  The evidence was conflicting as to whether there was any fastening at the second floor.  There was no dispute that the ladder projected several feet above the third floor.  The last rung of the ladder

below the third floor was within about 2 inches of the floor, and behind and slightly above this rung a part of the molding or cement form projected, so that an insecure foothold was afforded at this point. Several of the witnesses had slipped and narrowly avoided injury when attempting to step upon this rung. It further appeared that the carpenters, elevator men, plumbers, steam fitters, and brick layers working upon the building all used this ladder in going from one floor to another, and that there was no other means furnished or used during the time this ladder was in position. It did not specifically appear by whom it was originally placed in position, but the assistant foreman of carpenters employed by the defendant, and testifying for it, said "that the ladder was fastened at the top floor and bottom, and was perfectly solid; that it had been traveled up and down for weeks; * * * that *they* had to put them very straight for the hod carriers to carry brick up; that the hod carriers had been carrying the brick up in hods on their shoulders two or three weeks before that, and that the ladder had been in the same condition all that time."

On said 25th of February the plaintiff, who had then worked about two days on the second floor, was directed by said assistant foreman of carpenters to work on the third floor, where he had not theretofore been. In ascending, plaintiff carried some tools with him; and in his testimony was positive that he stepped from the rung below the rung in question to the third floor, a distance of about a foot only, which he said was usual with carpenters. Plaintiff did not observe the dangerous proximity of the rung to said cement form, and the assistant foreman, who either preceded or followed him, did not inform him of such danger. The evidence of other witnesses tended to show that, in beginning his descent of the ladder, plaintiff attempted to step on the rung in question; "that his foot slipped and he came down at arm's length, and then his hands gave way," and the fall and very serious injury resulted. A Mr. Kracke, an elevator constructor who, at the time of the accident, was employed as district superintendent of the Marine Engine & Machine Company of New York, testified "that when a man

was standing on the top landing about to descend the ladder, looking down, this cleat looked on the level with the rung, but when witness got down, his foot slipped, and when he got down on the level with this rung and cleat, witness found that it was above the rung and saw it was dangerous, and so notified his men when he went downstairs."

At the close of all the evidence defendant asked for a directed verdict, which the court refused.

*Mr. Paul Sleman, Mr. Harry F. Lerch,* and *Mr. Walter L. Clark,* for the appellant:

1. A ladder is a tool for performing work. Bailey, Mast. & S. 2d ed. § 197; *Sheridan* v. *Gorham Mfg. Co.* 66 Atl. 576; *Cahill* v. *Hilton,* 106 N. Y. 512; *McKay* v. *Hand,* 168 Mass. 270; *Jenney Electric Light Co.* v. *Murphy,* 115 Ind. 566; *Meador* v. *Lake Shore R. R. Co.* 138 Ind. 290; *Borden* v. *Daisy Roller Mill Co.* 74 N. W. 92.

2. The duty of adjusting the ladder in place was that of the plaintiff and his coservants. *Quinn* v. *Fish,* 26 N. Y. Supp. 10; *Cregan* v. *Marston,* 126 N. Y. 568, 27 N. E. 952, 953; *Arnold* v. *President,* 125 N. Y. 15, 25 N. E. 1064; *Geoghegan* v. *Steamship Co.* 22 N. Y. Supp. 749; *Maher* v. *McGrath,* 58 N. J. L. 470, 472; *Kimmer* v. *Weber,* 151 N. Y. 417, 421; *Connor* v. *Pioneer Co.* (C. C.) 29 Fed. 629.

3. The plaintiff assumed the risk incident to the use of the ladder. *Crawford* v. *Amer. Steel & Wire Co.* 123 Fed. 280; *M. K. & T. Ry. Co.* v. *Wilhoyt,* 160 Fed. 444; *Buller* v. *Frazee,* 211 U. S. 459; *Schlemmer* v. *Buffalo R. R. Co.* 220 U. S. 590; *Skinner Adm.* v. *Central R. R. Co.* 73 Vt. 336; *Holloran* v. *Union Iron & F. Co.* 133 Mo. 470; *Donnelly* v. *Brown,* 43 Hun (N. Y.) 470; *Utah Cons. Min. Co.* v. *Bateman,* 176 Fed. 63; *Duncan* v. *Gernet Bros.* (Ky.) 87 S. W. 763; *Brady* v. *Norcross* (Mass.) 52 N. E. 528; *Sheridan* v. *Gorham Mfg. Co.* supra; *Wood* v. *Heiges,* 83 Md. 257; *Joyce* v. *Flannigan,* 111 Md. 481; *Hoar* v. *Merritt,* 29 N. W. 15; *Borden* v. *Daisy Roller Mill Co.* 74 N. W. 92; *Fitzsimmons* v. *A. J. Cesery & Co.* 55

So. 465; *Chicago* v. *Wagner,* 46 N. E. 76; *St. Louis Cordage Co.* v. *Miller,* 126 Fed. 495; *Norfolk* v. *Hight,* 76 N. W. 566; *Johnson* v. *Devoe Co.* 41 Atl. 936; *Ragoon* v. *Toledo,* 56 N. W. 612.

*Mr. Charles Cowles Tucker, Mr. Henry B. F. Macfarland,* and *Mr. J. Miller Kenyon,* for the appellee:

1. The ladder being fixed in place, it was impossible for the appellee to adjust it, as claimed by the appellant. This clearly distinguishes the case at bar from those cited by appellant, in one of which (*Quinn* v. *Fish,* 26 N. Y. Supp. 10) the court said: "But to adjust the ladder in place for use was a detail in the execution of their work which it was the duty of plaintiff and his coservants to perform."

2. This distinction is recognized in another case cited by the appellant (*Kimmer* v. *Weber,* 151 N. Y. 417), in which the court recognized that the master may himself assume to construct a proper platform or place upon which his employees shall stand, and says that if he assumes to do so he will be bound to furnish an appliance reasonably safe and suitable for the purpose. *Buzzell* v. *Laconia Mfg. Co.* 48 Me. 212, 77 Am. Dec. 212.

3. The appellee, when he entered the employment of the appellant, knew that he had to use the ladder in question, and of course he assumed the ordinary dangers incident to its use. He had the right to assume, however, that the ladder permanently fixed in place as it was, was so fixed or placed in position that it was reasonably safe for his use. He assumed the obvious defects; not particular ones of which he had no knowledge, unless they were so obvious that he would be charged with knowledge of them. *Staubley* v. *Potomac Electric Power Co.* 21 App. D. C. 160.

4. The ladder, fixed and placed in position when the men were employed, was an appliance by means of which they were required to perform the labor required of them; and accordingly the obligation was imposed upon the defendant to exercise

reasonable care and prudence in the location and fixing of this appliance, and to see that it was reasonably suitable, and safely placed and fixed in position for the purpose to which it was applied. This duty of the master was primary, and could not be delegated to a servant, so as to shield the master from liability for damages occasioned from the omission of any servant to properly discharge it; and the fellow-servant rule has therefore no application to the case, even if it be assumed that the fixing of the ladder in place was the work of fellow servants. *Kranz v. Long Island R. Co.* 123 N. Y. 1; *Sims v. American Steel Barge Co.* 56 Minn. 68; *Corson v. Coal Hill Coal Company,* 101 Iowa, 224; *Chambers v. American Tin Plate Co.* 64 C. C. A. 129, 129 Fed. 561; *Chicago & A. R. Co. v. Scanlon,* 170 Ill. 106; *Baltimore & P. R. Co. v. Elliott,* 9 App. D. C. 341; *McCauley v. Southern R. Co.* 10 App. D. C. 560; *Carter v. McDermott,* 29 App. D. C. 145; note to *Haskell v. Cape Ann Anchor Works,* 4 L.R.A.(N.S.) 220; *Neeley v. S. W. Cotton Seed Oil Co.* 13 Okla. 356, 64 L.R.A. 145; *Elliott v. Sawyer* (Me.) 77 Atl. 782; *Barkley v. S. A. Waste Co.* (N. C.) 61 S. E. 565; *Sprow v. Staples,* 38 App. D. C. 219.

Mr. Justice ROBB delivered the opinion of the Court:

The single question now presented is whether there was sufficient evidence upon which to submit the case to the jury. The defendant contends that "a ladder is a tool, and not a place to work," and hence that it should not be held responsible for an injury resulting from the negligence of a coemployee in adjusting the ladder in question. It is true that, generally speaking, a ladder is classed as a tool (Bailey, Mast. & S. § 197; *Cahill v. Hilton,* 106 N. Y. 512, 13 N. E. 339; *Borden v. Daisy Roller Mill. Co.* 98 Wis. 407, 67 Am. St. Rep. 816, 74 N. W. 92), but that it may be more is, we think, apparent. When, in the construction of a building, ladders are furnished for indiscriminate and constantly changing use by carpenters and other employees, their employer is of course not expected to superintend or be responsible for such use. Under such conditions the use

of a ladder is a mere detail in the work, and the master would no more be expected to superintend that use than he would be expected to superintend the use of a handsaw, hand plane, or any other similar simple implement. A condition might exist, however, where the employer would feel called upon to assume responsibility for the placing of a ladder, in which event the ladder would become, in legal contemplation, a part of the building, and not a mere tool. Of course if it did assume such responsibility, it would be responsible to its employees for any negligence in that respect. To illustrate: Where an employer furnishes suitable materials, and the workmen construct a scaffolding or staging as a part of their work and in the exercise of their judgment, the employer is not liable for an injury to one of their number occasioned by the subsequent use of the structure in consequence of neglect in construction. *Collins* v. *John W. Danforth Co.* 36 App. D. C. 598; *Kimmer* v. *Weber,* 151 N. Y. 417, 56 Am. St. Rep. 630, 45 N. E. 860. But a different rule applies if the employer himself undertakes to furnish such scaffolding or superintend its erection. "In such case the duty is one of those positive duties of the master toward the servant which cannot be discharged by the substitution of a competent agent. The act or service to be done is that of furnishing a reasonably safe place or appliance, and negligence in the doing of such a service is the negligence of the master, without regard to the rank of different employees." *Chambers* v. *American Tin Plate Co.* 64 C. C. A. 129, 129 Fed. 561, 562.

We come, then, to the question whether there was evidence from which the jury might reasonably infer that defendant undertook to furnish and supervise the means of going from the first to the third floor of its building during the period covered by the evidence. In the first place, it must be kept in mind that there were several classes of employees engaged upon this building; that all used this ladder, there being no other means provided; that it was securely fastened, at least at two floors; that its position was not changed for many weeks, one of the witnesses fixing the period as covering three months. The testimony of the assistant foreman of carpenters that "they" had

to put such ladders very straight for the use of hod carriers is significant. The witness was then explaining the reason for placing the ladder in the particular position described, which, as before pointed out, was in the nature of a permanent, and not a transitory and shifting, position. These facts and circumstances, coupled with the failure of the defendant to call its superintendent in general charge of the construction of the building, or any other witness, for the purpose of denying that the company had assumed any duty with respect to the placing of the ladder in the position described, we think justified the jury in finding that the defendant had assumed the responsibility charged in the declaration.

When plaintiff was employed this securely fastened ladder projected from the first to the third floor of the building, and constituted the only means whereby access to and from the second and third floors could be had. And this means was not for carpenters alone, but was for the general use of the various classes of workmen engaged upon the building. It is apparent from the testimony of the assistant foreman of carpenters that the bricklayers were not expected to adjust and secure the ladder in performing their work. If the company undertook to place and secure the ladder for the bricklayers, knowing, as the evidence shows it must have known, that it was to be used by all its workmen, then it was responsible to all, and the evidence warranted the jury in so finding.

On the question of whether the plaintiff was guilty of contributory negligence, little need be said. In the circumstances of the case, we think it was clearly a question for the jury whether the defective conditions producing the injury were known, or, in the exercise of reasonable care, should have been known, to the plaintiff. This was his first attempt at descending the ladder from the third story. He had made but a single ascent to this story, and testified that in making that ascent he did not step upon the rung in question, and did not notice its condition. Other witnesses had testified that their knowledge of the dangerous proximity of the rung to the cement form was gained by slipping from the rung, which testimony tends to

show that the defect was not so obvious as to be plainly apparent to one having the right to assume that no defect existed. In *Mosheuvel* v. *District of Columbia,* 191 U. S. 247, 48 L. ed. 170, 24 Sup. Ct. Rep. 57, it was held that where a hole exists in a sidewalk as a result of negligence of the authorities, and renders ingress and egress from a house more or less dangerous, it is not such contributory negligence *per se* for an occupant of such house, who has knowledge of the hole, to try to step over it, instead of going around it, as will justify the direction of a verdict for the defendant. In the present case, therefore, it was clearly for the jury to say whether plaintiff knew, or should have known, of the danger when he attempted to descend.

Judgment affirmed, with costs.                    *Affirmed.*