## LAGONDA CITIZENS NATIONAL BANK
### v KNOWLES

Ohio Appeals, 2nd Dist, Clark Co

Decided June 2, 1934

Martin & Corry, Springfield, and Keifer & Keifer, Springfield, for plaintiff in error.
Orel J. Myers, Greenville, B. A. Myers, Celina, and McGrew & Laybourne, Springfield, for defendant in error.

SHERICK, J, (5th Dist) sitting by designation.

**OPINION**

By HORNBECK, PJ.

In considering the insufficiency of the proof other matters of evidence should be referred to. It appears that the Bank paid the laborers who did the work of repair, and that it paid for such implements as were used in the work. There is no evidence in the record that the step ladder appeared defective at the time of the accident. In fact, Knowles and Mr. Link say that they saw nothing wrong with it. Upon Knowles' explanation of the happening, which is the only explanation in evidence, the ladder appeared to be nailed at the top, and he exerted some pressure which caused it to fall, and that "the ladder pulled away from the wall and I fell."

From this testimony it might be reasonably inferred that, although the ladder appeared safe, it was, in fact, insecure which caused him to be precipitated to the floor. Viewing this evidence and the presumption deductible therefrom in the light of his theory of the case, that is that he was there by invitation, it must be concluded that there was sufficient evidence to cause the issue to go to the jury. We discuss its weight upon the whole record hereafter.

We are unable to appreciate wherein the plaintiff's own evidence raised a presumption of negligence. He was not, in fact, engaged in handling a defective common tool, but simply used it as he found it, as a means to gain access to the roof. He saw no defect in it and in probability none would appear from the customary use going up and down. When one steps upon a ladder he subjects it to a pressure equal at least to the weight of his own body, which on this ladder was both direct and sidewise from above.

We are cited to **The May Company v Cummings, 17 O.C.C. (N.S.) 548.** A quota-

tion of the syllabus marks the difference between the cited and the instant cases.

"One who goes upon an escalador with knowledge that it is out of order and in dangerous condition, cannot recover if she is injured by reason of the defect of which she knew."

As to the claim that the plaintiff assumed the risk, it may be said that there is no showing from the proof made that he did not exercise ordinary care to avoid injury to himself. The ladder had been in use for years. Against the wall it had no patent defect but the facts permitted the findings that a defect existed in its insecure fastening to the wall. In other words, the defect in this particular was not in the ladder itself but a latent defect in its fastening. The same may be said as to the play in the ladder. Even an expert can hardly be held to be chargeable with knowledge of a latent defect. We are unable to find, under the plaintiff's theory of his case, that he is chargeable with having assumed the risk.

We are referred to Jenney Electric Light & Power Company v Murphy, 115 Ind. 566 (18 NE, 30) and Meader v L. S. & M. S. Ry. Company, 138 Ind. 290 (37 NE, 721). In each of these cases it appears that the plaintiff had knowledge of the defect in and the dangerous condition of the ladder which caused his injury.

McDonald v Lovell, (Mass.) 82 NE 955. It appeared that the ladder was movable; that the foot of it was placed too far from the wall, which condition the court said should have made it apparent to the plaintiff that it might fall by ordinary usage.

In Kahill v Hilton, 106 N. Y. 612 (13 NE 339) the court in the opinion said:

"The evidence upon which our opinion is based was undisputed, and, when carefully analyzed, leaves no room for doubt as to the manner of the accident, or at least that it was not occasioned by the breaking of the ladder."

The plaintiff admitted that the operation which he was performing at the time he was injured was dangerous and that he knew it to be dangerous.

The court further said that:

"the theory that the ladder broke, on account of its defective material, and precipitated him upon the belt, thus causing his entanglement therein is not only improbable and unnatural, but is contradicted by every reasonable inference to be drawn from the known circumstances of the case."

It is urged that the court erred in refusing to permit the jury to determine if Knowles was a trespasser or an invitee on the roof of the Bank building on the date of his injury. An examination of the record discloses certain admitted facts. It is admitted that Knowles for his company sold to the Bank a preparation of primer and Horn Blende Asbestos Fibre Compound for a certain purpose, namely, to repair a leaky roof on the bank building; that the product was guaranteed. To accomplish this guarantee it was commonly understood and agreed that Knowles would supervise and assist in applying the material. It follows that his company could not comply with its contract and guarantee if it did not make the roof water-tight. In the very nature of the case this obligation of the company contemplated such investigation, inspection and attention to the roof as would make and keep it water-proof during the period of the guarantee.

It is conceded that the material originally purchased was shipped to the Bank; that Knowles came on to the premises and with three employees which the Bank provided the material was applied to the leaky roof. It is conceded that, thereafter, the roof did leak and that in April, 1931, the Bank, through Mr. Link, notified Mr. Knowles of that fact. This is further express acknowledgment that the Bank looked to Knowles' company for further service incident to the repair. In response to this notice Knowles came, inspected the roof and ordered more material without cost to the Bank and caused it to be placed upon the roof.

It is likewise conceded that after the date of Mr. Knowles' fall the Bank, through Mr. Link, first notified Mr. Knowles and later his company to the effect that the roof was still leaking and the company sent thirty gallons of material gratis, to be placed upon the roof. However, when Mr. Knowles went to the roof of the Bank on the day of the accident it is in dispute if he was notified to come. He says that he saw Constantine Link that day and it was mutually agreed that he look at the roof. Mr. Link says he did not see Knowles that day and that nothing was said to him by Knowles respecting a purpose to go upon the roof.

The narrow question, then, is whether or not, on this dispute of fact, there arises any probability that Knowles in going upon the roof, was a trespasser instead of an invitee of the Bank. Frank W. Harford, the cashier, says that when he saw Knowles going up and down the elevator at the Bank he knew he was going up on the fourth floor, up on the roof to fix the roof; to put some new coating on the roof; that when Knowles came to the Bank he said he was to repair the roof; that he was the man to fix it.

Mr. Link testifies respecting the second application of material by Mr. Knowles that:

"He (Knowles) told me when this material arrived to let him know because he wanted to be there and wanted to put it on, that it was his job, that his company wanted him to do it, that he was an engineer and that he wanted to see that it went on right and that we would not have to pay him anything for his services. I notified him by telephone, I think, when the material arrived and in a day or two I think he came and put it on.

"Q. Did you ask him to come back and put it on?

"A. I didn't ask him to do anything. That was his own proposition. He said: 'My company wants me to put this on and my company looks to me to see that it is put on properly'."

Page 21. "Q. Each time Mr. Knowles came back to see this roof, he came at your request, did he not, Mr. Link? A. He came after I notified him, yes."

He further testified that after the accident he again called upon Mr. Knowles to report the condition of the roof and that he did so because he understood that Mr. Knowles from time to time would check on the roof to see that it was kept in proper condition. He further says that on the day that Mr. Knowles was injured he went on the roof for the purpose of inspecting it and making the necessary repairs that were needed.

William Stowers, the janitor of the Bank, says that when Knowles came to the Bank he said he wanted to go up to the roof to see whether or not it was leaking; to examine the roof. On the day of the accident Mr. Stowers says that he took Knowles up in the elevator to the third floor, went up to the fourth floor with him, helped him get the skylight up, gave him a broom, showed him where the tar was.

There is no doubt that on the day of the accident Mr. Knowles did go to the roof for the purpose of examining its condition of repair and that he did place the material thereon. With the knowledge of the general character of the transaction between Mr. Link on the part of the Bank and Mr. Knowles on the part of his company, that the ultimate object to be obtained was a waterproof roof, if there were nothing more in the record it would seem that Knowles, as a representative of the company, would have the right and would be expected, at all reasonable times, to go upon the roof for inspection and repair until it was in such condition as was contemplated by the guarantee. The express testimony of Mr. Harford, Mr. Link, Mr. Stowers and Mr. Knowles seems convincing that on the day of the accident Knowles was on the roof by consent and invitation of the Bank.

However, if there could be any doubt that Knowles was an invitee on the roof the day of the accident, upon the contractual relations of the parties and their interpretation thereof by conduct, it would be dissipated by the express testimony and admissions of Mr. Constantine Link on his cross examination when he was on the stand for the defense.

Page 172 of the record:

"Q. After Mr. Knowles fell, you had some trouble with this roof again? A. We did.

Q. And then you called Mr. Knowles and asked him to come in and look after your roof? A. I called him to report the condition of the roof.

Q. And the reason you called him to report and look after that roof was because you understood he, from time to time, would check on the roof to see it was kept in proper condition, wasn't it? A. Yes.

Q. And the day Mr. Knowles went there on July 7, 1931, he went there for your benefit, and also for the benefit of the American Fibre Products Company, and himself? A. Well,—

Q. Yes or no—you can answer yes or no. A. You can't answer yes or no.

Q. You can explain after—

Question objected to.

THE COURT: The witness should answer the question if he can.

A. He went there for the purpose of inspecting the roof and making the necessary repairs, I suppose, that were needed.

Q. Which was for the benefit of the bank, and his Company, as well? A. Well, be for both benefits, I suppose, to repair the roof."

Syl. 1 of **Pennsylvania R. R. Company v Vitti, Admr., 111 Oh St 670,** and Syl. 5 of **Haubrich v Lamping, 20 Oh Ap 749,** were based on records in which there were disputes as to the relationship of the plaintiffs to the defendants—whether invitees or trespassers.

The jury in this case could have reached but one conclusion, namely, that Knowles at the place where and, on the day when injured was an invitee of the Bank and the court committed no error in refusing to submit the question as a disputed fact.

It is also charged that the trial court erred in permitting the introduction of evidence of changed conditions on the premises. We see no error in this respect for the court on motion instructed the jury that the testimony could not be received to prove actionable negligence against the Bank.

The prejudice to which attention is drawn in **Rohr v Scioto Valley Traction Company, 12 Oh Ap 275** and **Harig v McCutcheon, 23 Oh Ap 500 (5 Abs 130)** does not appear in the record in this case.

Error is also predicated upon the trial court's ruling in that Link, as a director of the Bank, was held to be an officer of the Bank, and compelled to submit to cross examination by the plaintiff. This claim necessitates a consideration of §11497 GC, which prescribes that a party may be examined as if under cross examination at the instance of the adverse party, and that "if the party be a corporation, any or all of the officers thereof may be so examined." Authorities are to be found which hold that a director of a corporation is not an officer; recent adjudications however, and especially so in respect to bank directors, take a more modern view, when its stockholders, depositors and strangers are concerned, in that although a director is not an executive officer, he is nevertheless an officer of the bank, and even though his act individually cannot bind the bank, yet knowledge acquired or possessed by him is knowledge to the corporation itself and with which it must stand charged.

The Bank advances that the statute is in derogation of the common law, and that it must therefore be strictly construed. On the other hand it is urged that the statute is remedial in character and should, therefore, receive a liberal construction. Bills of discovery were not unknown in chancery cases; and it is our view that the statute but enlarges and simplifies a procedure, now amounting to a statutory rule of evidence; and those that readily fall within its terms must be included within its provisions under the generic term "officers." This interpretation is adopted in **State v Whitmore, 126 Oh St 381 (391),** which construes a criminal statute and which ordinarily invites strict construction. It was there stated, that:

"We regard the weight of authority, federal and state, as favoring the holding that a director is an officer of his corporation within the purview of the banking law."

See also, **Scioto Valley Ry. Co. v McCoy, 42 Oh St, 251,** wherein it was held that service of notice upon a railroad director was sufficient in the matter of perfecting a mechanics lien when service of notice was required by statute to be made upon an officer of the corporation. It is remarked that recent federal bank legislation provides that a director of a national bank shall be considered as an officer for numerous purposes.

In this case Mr. Link had all the authority in the transaction involved to bind the bank and to act for it as could have resided in any executive officer of the bank by virtue of his office. Mr. Link's status in fact argues for a broad interpretation of the statute.

Coming to the question whether or not the verdict is against the manifest weight of the evidence. We have discussed the claim of contributory negligence of plaintiff. The theory of the plaintiff is that the fall may be explained by either one or both of two conditions, namely, the wobbly and unstable condition of the ladder and, second, the inadequacy or lack of fastening to the wall.

We do not have the advantage which the jury enjoyed of inspecting and examining the condition of the ladder. It is admitted, however, that the ladder was more than twenty years old; that it had play of 1½ to 2 inches; that several of the rungs or steps had been in a state of disrepair and had been repaired throughout the years; that on the date of the accident at least one of the rungs was in bad condition.

It is the theory of the Bank and was

testified by Mr. Link that in his judgment the ladder, though it had play in it, would be stable and not subject to play when it was standing against the wall. Unless we can say from what we glean from the record that this is a fact, we must indulge every favorable intendment to support plaintiff's theory respecting the probability of play in the ladder when against the wall, if subjected to a side strain. Especially is this interpretation required because the ladder is not brought on to the record. Though no blame attaches, it is unfortunate that an exhibit which is of such manifest importance to a material averment of the petition is not brought into this court. The jury had and no doubt availed itself of the opportunity to inspect and experiment with the ladder. The petition avers that the ladder pulled away from the wall and Mr. Knowles testified that he reached up to the left to unscrew the light out of the socket and the ladder pulled away from the wall and he fell. He also says in substance that there was a nail in the top of the ladder; that he did not know positively that it was nailed to the wall but that he took it for granted that it was so affixed. It is doubtful on the record if the ladder was ever attached to the wall. Mr. Harford and Mr. Link both testified substantially that it was not so affixed, although it is conceded that it had a nail in the top thereof. Mr. Link insists that the ladder at times was lying on the floor and was not against the wall but he admits that he never saw it lying on the floor after the building was repaired in 1928.

As we view this testimony, it is not so important on the question of the negligence of the Bank whether or not the ladder was affixed to the wall, if it had the appearance which would lead a reasonably prudent man to believe that it was so attached. Again the absence of the ladder is a disadvantage to a proper consideration of the case. However, it reasonably appears that the jury had the right to conclude that the appearance of the ladder as it stood against the wall with the nail at the top would leave the impression that the ladder was substantially held to the wall by the nail. It is also probable, that if it had been so nailed a side thrust would not, though the ladder may have been wobbly, have caused Knowles to fall. It is not necessary for the jury to resort to any inference to find that the ladder was defective. There is an abundance of direct evidence to that fact.

There is dispute upon which reasonable

minds might reach different conclusions whether or not the plaintiff could have fallen as he says he did. It is the theory of the Bank that his feet were but from 5½ to 6' from the electric light; that it was necessary that a part of his body be through the opening between the joists and that, though the ladder would have slipped he could not have fallen through the hole in the posture which the jury must have found he maintained when turning out the light. Mr. Knowles admits that he probably was standing on the next to the last rung of the ladder when he reached with his left hand to disconnect the light; that the upper part of his body was through the loft opening and that his right hand was probably on the joist.

We cannot say from these facts that it was a physical improbability that, if the support of the ladder was removed from under Mr. Knowles he would not have slipped out of and fallen from the hole through the loft. If he was able to force his body into the loft, of course, he could come out of the same opening and though he was braced by his right hand on the joist it might have been insufficient support to have stayed his fall.

The physical facts as developed from the testimony of the witnesses respecting the size of the ladder, the number of the rungs, their distance apart, its age and condition, its position against the wall, its appearance of security to the wall, together with the side stress to which it must have been subjected by Mr. Knowles when he reached to the left to unscrew the electric light from its socket, all permit of the conclusion that he could have fallen as he said he did.

We would not have undertaken to controvert a finding of the jury to the effect that under the physical facts appearing he did not fall as he claimed. But, in our judgment, the determination was one peculiarly within the realm of fact, concerning which the jury had full right to make decision and are of opinion that there was sufficient support for the verdict giving favorable interpretation to the plaintiff of the facts appearing in the record. Judgment affirmed.

BARNES, J, concurs.
SHERICK, J, dissents.

### DISSENTING OPINION

By SHERICK, J.

I agree with the majority except on one proposition.

I dissent from the judgment arrived at for the reason that it was a disputed question of fact as to whether or not Knowles was an invitee or a mere licensee at time of injury. This question, under the authority of **Railroad Company v Vitti, 111 Oh St, 670,** was one for the jury, and the trial court erred in its refusal to so charge.