## JULIUS KOSCHMAN v. CHARLES R. ASH.[1]

### June 15, 1906.

### Nos. 14,757—(106).

**Master and Servant—Inspection of Tools.**

No duty rests upon an employer to inspect simple and common tools to discover defects which arise from the ordinary use of such instruments.

**Same.**

The rule applied to a common sledge or hammer, which was purchased by the employer from a wholesale hardware dealer and which was in good condition when delivered to the employee.

Action in the district court for St. Louis county to recover $10,380 for personal injuries. The case was tried before Dibell, J., and a jury, which rendered a verdict in favor of plaintiff for $1,650. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed and judgment ordered for defendant.

*Miller & Clapp,* for appellant.

*John Jenswold, Jr.,* for respondent.

ELLIOTT, J.

The plaintiff, Koschman, was injured while in the employ of the defendant, Ash, and recovered a verdict in the court below. The appeal is from an order of the trial court denying the defendant's motion for judgment notwithstanding the verdict or for a new trial.

In 1903 Ash was operating a sawmill in Virginia, Minnesota.

[1]Reported in 108 N. W. 514.

Koschman was, and for some months had been, in his employ as a blacksmith, working in a shop operated in connection with the mill. At the time of the accident, July 17, 1903, Koschman was engaged with another employee by the name of Olson in cutting bolts from a rod of iron. Koschman placed the bolt on a beveled-edged instrument which rested upon an anvil and held a cold chisel on the upper edge of the bolt. Olson then struck the chisel with a sledge or hammer. After two or three strokes the bolt was cut almost through. Koschman then laid the end of the bolt across the anvil and Olson gave the tip end a light tap with the hammer. When this was done, a piece of steel flew from the end of the hammer and penetrated Koschman's eye. The complaint alleged

> That defendant did carelessly and negligently fail and omit to furnish for plaintiff's use a suitable and proper hammer to do such work, and in like manner did carelessly and negligently furnish the aforesaid hammer so used for the said use, which hammer was defective and not reasonably safe for use, and though of steel its face or head had not been properly, equally and evenly tempered, and the same was not smooth, but had, for a long time prior thereto, been subject to hard usage, and had been worn away, battered, and made unsafe for further use, and become indented and was full of thin splinters, chips, scales, or fragments which were loose, and pieces of steel therein were liable at any time, by a blow of said hammer, to be broken off and to fly therefrom and endanger persons who were present and engaged in and about its use.

It further alleged that for a period of more than four weeks prior to the time when the plaintiff was injured, the hammer had been in an unsafe and dangerous condition of which fact the defendant had full notice and knowledge, but nevertheless did carelessly and negligently furnish the same and require the plaintiff and his assistant to use the same in their work. The plaintiff's case rests upon the alleged truth of these allegations.

The defendant makes numerous assignments of error, but in view of our conclusion upon the question of the defendant's negligence, it is only necessary to consider one. The sledge or hammer was pur-

chased in the open market from a wholesale hardware dealer, and when furnished to Koschman it was new and in good condition. It is admitted that Ash cannot be charged with negligence in originally furnishing Koschman with a defective tool, but it is contended that it was his duty, not only to furnish to the employee a reasonably safe instrument with which to work, but after having done this to inspect the same while it was being used by the employee and remedy any defects which might be found to exist. The jury were instructed that if the defendant

> [Was] chargeable with negligence at all, it must be because he kept it in use without repairing, after it became in an unsafe condition for its intended use, knowing it to be in such condition or charged with such knowledge.

When the appliances or machinery furnished employees are at all complicated in character or construction, the employer is charged with the duty of making such reasonable inspection as is necessary to detect defects. But the master is under no duty to inspect simple or common tools, or to discover or remedy defects arising necessarily from the ordinary use of such instruments. Miller v. Erie, 21 App. Div. 45, 47 N. Y. Supp. 285 (a push-pole by which an engine on one track was able to move a car on an adjoining track) ; Marsh v. Chickering, 101 N. Y. 396, 5 N. E. 56 (a ladder) ; Cahill v. Hilton, 106 N. Y. 512, 518, 13 N. E. 339 (a ladder) ; Webster v. Nisbett, 205 Ill. 273, 68 N. E. 936 (a hammer) ; Meador v. Lake Shore, 138 Ind. 290, 37 N. E. 721, 46 Am. St. 384 (a ladder) ; Wachsmuth v. Shaw, 118 Mich. 275, 76 N. W. 497 (a snaphammer) ; Dompier v. Lewis, 131 Mich. 144, 91 N. W. 152 (a hammer) ; O'Brien v. Missouri, 36 Tex. Civ. App. 528, 82 S. W. 319 (a wrench) ; Gulf v. Larkin, 98 Tex. 225, 82 S. W. 1026 (a defective globe on a lantern) ; Lynn v. Glucose, 128 Iowa, 501, 104 N. W. 577 (a hammer of soft steel with which to break lumps of coal) ; Garragan v. Fall River, 158 Mass. 596, 33 N. E. 652 ; Martin v. Highland, 128 N. C. 264, 38 S. E. 876, 83 Am. St. 671 ; Georgia v. Brooks, 84 Ala. 138, 4 South. 289 ; Georgia v. Nelms, 83 Ga. 70, 9 S. E. 1049, 20 Am. St. 308 ; Jenney v. Murphy, 115 Ind. 566, 18 N. E. 30 ; Labatt, M. & S., § 154.

In Stork v. Charles Stolper Cooperage Co., 127 Wis. 318, 106 N. W. 841, it was held that, under the circumstances there disclosed, the duty of inspections extended to a small tool known as a monkey wrench. But the court said: "It may be conceded that generally speaking, a monkey wrench is in such category, and the rule of law is well established in this state and elsewhere that, in case of such simple tools, no liability rests on the master for the ordinary perils resulting from their use, nor for those latent and usual defects or weaknesses which, by reason of the common, usual character of the appliance, are presumed to be known to all men alike. This exemption from liability is, we believe, in all cases, based upon the condition that the defect and peril are such that no superiority of knowledge in the master over the employee exists or can be presumed." The liability in that case was rested upon the exception to the general rule said to exist when the defect is known to the master and neither known to the employee nor of such a character as to be obvious to that observation which may be expected to accompany its use.

The present case does not fall within such exception. The instrument was a common, ordinary sledge or hammer, weighing eight pounds and having a handle about three feet long. It was of the type in common use by unskilled laborers for a variety of purposes such as breaking stone and driving stakes. It was one of the simplest and commonest tools in use. It was a general utility instrument, often used for general purposes about the premises when not in use in the blacksmith shop. It was a sledge such as is "generally used in a blacksmith shop." It was a double headed or faced two-handed sledge, about as simple in construction and as easy to understand as a club. It was made of steel, but was not evenly tempered. It was not what is known as a "flogging" hammer. It does not appear that it was originally unsuitable for the work for which it was being used. When the plaintiff began to use the sledge it was new and in good condition, but by the time of the accident it had become somewhat battered and one end chipped off. Plaintiff says that for some four weeks before the accident so many chips were breaking off the hammer that it became in a dangerous condition, and he remarked to his fellow workman that it was very poor and that he could not hit well with it. He

also observed that chips were breaking and flying off. He did not, however, complain of the condition of the hammer to Ash or to the foreman of the mill. There were other long and short handled hammers of lighter weight about the premises, but it appears that this was the only sledge at hand and Olson picked it up to use in the work of cutting the bolts because it was handy. It is thus apparent that the sledge was a tool of the commonest character, and that the plaintiff had full and complete knowledge of its condition during all the time it was in use. The employer never assumed to inspect the tool.

In Vant Hul v. Great Northern Ry. Co., 90 Minn. 329, 96 N. W. 789, the defendant not only manufactured the hammers, but kept them in a room fenced off for the purpose, and provided a tool inspector whose duty it was, on the application of the workman, to hand out the tool for the particular purpose. The hammer there under consideration was a "flogging hammer," and the court said: "The hammer in question was manufactured by appellant. Such hammers were made from bars of steel, and it required experience and great skill to properly temper them, and very few will stand continual use without, in the course of time, showing cracks or checks upon their surface and edges, which appear sooner or later according to the temper of the steel and the manner and length of time of use, and that, as a result of such checks and cracks, there comes a time in the life of such hammers when they are liable to break and must be set aside as useless. * * * When we consider the skill required in the manufacture of such hammers, and the fact that there arrives a point in the course of their use when their vitality is destroyed and they are liable to check and break, a condition is presented which takes them out of the class known as common tools whose condition is as easily discernible by a workman as an inspector."

The tool which caused the injury under consideration in Morris v. Eastern Ry. Co., 88 Minn. 112, 92 N. W. 535, was also a flogging hammer,—"a tool which we must assume is somewhat different from an ordinary hammer," and the injury "was not caused by, or the result of, use or wear, but, according to the allegations of the complaint, a defect in making,—the manufacturer being the defendant itself."

As the defendant was under no obligation to inspect the sledge after it was delivered to the plaintiff in good condition the motion for judg-

ment in favor of the defendant notwithstanding the verdict should have been granted.

Order reversed with directions to the district court to grant the defendant's motion for judgment notwithstanding the verdict.