## Reffitt v. Southern Sheet & Tin Plate Company.

(Decided May 24, 1916.)

### Appeal from Boyd Circuit Court.

1. Master and Servant—Safe Place to Work.—It is the duty of the master to use ordinary care to provide his servant with a reasonably safe place in which to work, and this duty he can not delegate to another and escape the consequences of failure to provide a reasonably safe place for the servant to do his work.

2. Master and Servant—Assumption of Risk.—A servant never assumes the risk of the master's negligence in furnishing him with a reasonably safe place to do his work, in the absence of a contract to assume such risks.

JOHN W. WOODS and A. T. BRYSON for appellant.

PROCTOR K. MALIN for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

The appellant, Alonzo Reffitt, was an employee of the appellee, Southern Sheet & Tin Plate Company. The latter is a corporation engaged at Ashland in the manufacturing of roofing material out of sheet iron. It employed from ten to fourteen laborers, all of whom were subject to the directions of a foreman, who had general authority over the labors of the workmen at the plant. Several of them did practically the same character of work. They loaded cars with the products of the factory for shipment, and unloaded the cars in which the raw ma-

terials for manufacturing were brought to the plant, and did generally any character of work which was necessary about the plant for the conduct of its business. The appellant was one of the men, who were employed in loading and unloading cars and doing general work about the establishment. He was twenty-four years of age and had been engaged as above described for seven or eight months, when he received the injury, to recover damages for which he brought this suit. The appellee, for its purposes, had a large building with six doors, which opened upon one side, and in front of these doors there was a side track which connected with a railroad and upon this side track the cars which contained materials to be used in manufacturing roofing would be drawn and left in front of the doors, with a door of the car directly opposite one of the doors of the building. Cars to be loaded with the manufactured products of the plant would, also, be placed upon this track. The track was situated near enough to the wall of the building that the side of a freight car standing upon the track would be from two to three feet from the wall of the building, as the car was a wide or narrow one. When it was desired to remove the contents of a car into the building or load a car from the building, a bridgeway would be laid between the car door and a door of the house, one end of the bridgeway resting in either door. Over the bridgeway the employes of appellee would walk or haul trucks loaded with the materials, in loading or unloading the car. The doors of the cars were upon a level, slightly more elevated than the doors of the house.

The bridgeways were forms made of three or four boards, which were four or five feet in length, and were three or four feet in width. The boards were joined together and held by cleats, which were bolted to the boards. The cleats were fastened underneath the boards, as the bridgeways were used, and the tops of the bridgeways were covered with sheet iron. The bridgeways were six in number, and four of them were provided with two cleats, each, one near to either end of the bridgeway, while the other two bridgeways had only one cleat, each, for a reason which will be stated later. The cleats served a double purpose. One purpose was to hold the boards together, and the other purpose was, that when the bridgeway was in use it could be so

adjusted that one cleat would rest against the sill of the door to the house and the other against the sill of the door to the car, and thus the bridgeway would be prevented from slipping while in use. All of the bridgeways had originally been provided with a cleat near either end, but on account of the varying widths between the wall of the house and the different cars, which was caused by the difference in the widths of the cars, the bridgeways, as originally made, could not be. adjusted, so that the cleats would go down between the door of the house and that of the car, in every instance. Sometimes the distance between the house and car was such, that one of the cleats would have to be rested upon the floor of the car or of the house. To avoid this trouble one of the cleats upon each of the two bridgeways was removed. When using a bridgeway, which had only one cleat, the bridgeway would be so placed that the cleat would rest against the door sill of the house, if unloading a car; if loading a car the bridgeway would be placed, so that the cleat would rest against the door sill of the car. This prevented the bridgeway from slipping and kept it in position when a heavy truck was moved upon it from the house, and kept it in position when it was put to a like service when a truck was pushed over it from the car into the house.

By general orders from the foreman, when a car was to be unloaded and the contents removed into the house, whichever ones of the employes, were not then engaged in other duties, proceeded to the work of unloading the car without any specific directions, at the time, from the foreman, and whoever, first went into the car, put in a bridgeway between the car and house. As opportunity then offered, the employes would go into the car and prepare the contents to be removed and remove it by the use of trucks from the car into the building over the bridgeway. The ends of the bridgeways were beviled, so that the wheels of the truck would pass upon them more easily. When not in use, the bridgeways were placed against the walls of the building or put away within it. The several employes whose duty it was to load and unload the cars, and did other general work about the plant, did practically the same character of work, and oftentimes several cars were upon the track at the same time awaiting loading or unloading, and the employes engaged in this work under-

standing orders, and frequently without any specific directions at the time to do so from a superior, and of those who engaged in this work no one of them was superior in authority to the others.

In November, 1913, a car was upon the side track, which contained sheet iron to be unloaded into the building. Some one, presumably one of the employes of appellee, had opened the car and put one of the bridgeways between the door of the car and the house. The evidence fails to indicate what person had done this, as no one was at work in the car when appellant was directed to go into it and remove the sheet iron into the house, neither does it appear whether the car had been opened and the bridgeway put in by a specific order from the foreman or under the standing orders under which the employees worked. The appellant testifies that he did not put in the bridgeway, and that he does not know who did so, as it was there when he first came to the car. Whoever had opened the car and adjusted the bridgeway had put in one which had but one cleat upon it, and instead of placing it so that the cleat would rest against the door sill of the house, had so placed it that the end upon which the cleat was, rested in the doorway of the car. The appellant testifies that he had been to the railroad depot in the town to assist in delivering something there for appellee, and when he returned and went into the office of appellee to deliver there certain bills for freight, he was then directed by the foreman to go into the car and to proceed to unload its contents into the building. The car, at that time, had been already opened and the bridgeway adjusted. The foreman denies that he gave him any such directions, and denies any knowledge of appellant being in the car until after his injury. However this may be, the appellant, with another employee, went into the car and placed a load of the iron upon the truck and proceeded to go out of the car with it, the appellant in front and pulling the truck, while the other employee was in the rear of the truck and pushing it, and when appellant had gotten upon the bridgeway between the car and the building, the truck, when it came in contact with the bridgeway, pushed it forward and there being no cleat upon it resting against the door sill of the house to prevent it being pushed forward, the end which was in the car door slipped off and fell to the ground, which precipitated the appellant to

the ground, with the truck and its load upon him and injured his foot very greatly. The weight of the truck and the load was two or three thousand pounds, and the appellant was extricated with difficulty. The bridgeway was caused to slip and fall because the cleat upon it was rested against the door sill of the car and there was no cleat at the other end against the door sill of the house to prevent the bridgeway from slipping when the wheels of the truck were pushed against the end of it in the car.

This action was instituted by appellant to recover of appellee damages on account of his injury. He based his right to recover upon the allegation that appellee had negligently failed to exercise ordinary care to provide him with a reasonably safe place in which to work, by putting in the bridgeway with the cleat upon the end next to the car instead of putting the end with the cleat upon it in the door of the house, and by the use of a bridgeway with only one cleat upon it; that same was negligence and the cause of his injuries. The appellee traversed the allegations of negligence, and in addition offered pleas of contributory negligence, assumed risk and accord and satisfaction.

At the conclusion of all the evidence the court directed the jury to find a verdict for appellee, which it did and a judgment was rendered thereupon dismissing the petition, and the appellant asks a reversal of the judgment upon the ground that the court erred in peremptorily directing a verdict of the jury against him.

The facts necessary to be considered for the purpose of determining whether the appellant presented such facts in evidence as entitled him to have his cause submitted to the jury are proven to be as above stated, without much contradiction. There is no pretense that any of the superior servants or officers of appellee had any actual knowledge of the fact that the bridgeway had been negligently adjusted between the car and the house. There was not any defect in the bridgeway, which would render it unsafe, if properly used, and although constantly used no accident had previously occurred from its use. An appliance could not be more simple in its construction than it, and it is entirely devoid of any complications or intricacies of mechanism. The bridgeway was entirely safe and sufficient for its purposes, if properly adjusted in its place. The per-

son who opened the car and put in the bridgeway negligently placed the end of it in the car, which he should have placed in the door of the house. The appellant knew that two of the bridgeways were provided with only one cleat, each, and for the purpose of unloading the car, if one of the bridgeways which had only one cleat was used, to render the place of his work safe, it was necessary to place the end with the cleat upon it in the door of the house. It does not appear, however, that any one well acquainted with the bridgeways could, by observing the top of them, distinguish the ones which had only one cleat from those which were provided with two. It is, also, apparent that the top side of the bridgeways being covered with sheet iron, the appellant could not by observing it, as it was placed, have discovered whether it had one or more cleats upon it or if only one cleat, upon which end of the bridgeway the cleat was. For appellant to have discovered these facts it would have been necessary for him to have gotten upon the ground and examined the bridgeway from underneath.

For appellant it is contended that the principle which makes it the duty of the master to exercise ordinary care to provide his servant with a reasonably safe place in which to work ought to be applied to the facts of this case, and if applied there was evidence which tends to prove that appellee did not exercise ordinary care to provide the appellant with a reasonably safe place in which to do his work, and that his cause should have been submitted, under proper instructions, to the jury upon that issue.

Upon the other hand it is contended for the appellee, that the facts of this case do not bring it within the rule as contended for by appellant, but that the principle which provides that the master must exercise ordinary care to provide his servants with reasonably safe appliances with which to work, and that if he does so, and the servant receives an injury from the negligent use by himself of such appliances, or is injured by the negligence of a fellow servant in the use of such appliances, that the master is not liable for the damages and hence there being no evidence that the master had not furnished a safe bridgeway, and the evidence being to the effect that appellant's injuries were incurred by the negligent adjustment of the bridgeway by a fellow servant, there was nothing to submit to the jury, and the

court below was not in error in directing a verdict for appellee.

While both of the above stated doctrines are sound as abstract principles, the difficulty arises when it is undertaken to invoke either one of them, as applied to the facts of this case. The bridgeway was no doubt an appliance and doubtless the injury to appellant arose from the negligent act of his fellow servant in adjusting the bridgeway improperly. It is, also, certain, that the car with the bridgeway leading from it into the door of the house is a place of work, and the place prepared by the master for his servant to do his work in. The same rule which applies to the appliances furnished by the master for his servant to do his work with, also, applies to tools and machinery provided by the master. While an appliance has been defined as "the thing applied or used as a means to an end, an apparatus or device," and this definition is broad enough to embrace anything used as a means to an end, it is evident that the manner of the use and the purpose of it and the use to which it is applied must be looked to to determine whether the thing under consideration is such an appliance, as applied to which the principles of the law which govern the furnishing and use of appliances by the master to the servant may be applied. A hand railing along a stairway and a shutter to a door are appliances, yet they can only be considered as composing a part of a place. That the bridgeway is not a tool, within the contemplation of any legal principle, is evident, and is not an appliance in the sense that an elevator, hoist or shaft is. The better reason seems to be that the bridgeway, as used and intended under the facts of this case, should be considered not as a tool or as an appliance, as contemplated by the legal principle sought to be invoked by appellee, but as simply composing a part of the place provided by the master wherein appellant should do his work.

It is, however, insisted that the rule which makes it imperative upon the master to furnish the servant a reasonably safe place in which to work does not apply where the place of work is not a permanent one. The place of work composed of the car, bridgeway, etc., is indeed not a permanent one in the sense that it will not be removed as occasion may require, but it is, however, a permanent place of work until the work in hand—

that is the work of unloading the car—shall have been completed. The place was not the result of the work in which appellant was employed, but was the place prepared beforehand by the master as a place for the doing of the work, and the place did not change as the work progressed, and hence the principle above stated does not apply to it. It is distinguishable from the state of case where the master furnished suitable materials, and it is the duty of the servants to construct scaffolds in the prosecution of the work, and an injury results from negligence in the construction of the scaffold, and it is, also, distinguishable from the state of case where, in the prosecution of the work, the place changes from a safe to an unsafe one as a result of the work done by the servant. For the reasons above stated, the principle which holds that where a master has furnished safe appliances, and the negligence consists in the use of defective appliances, where safe appliances of the same kind have been furnished, that the negligence relates to a mere detail of the work, and the master is not liable, does not have application, as the appellant did not select the appliances, but entered upon the work at the place which had already been prepared by the direct command of the representative of the master. If appellant had adjusted the bridgeway he would have been precluded from recovery, because with knowledge of the unsafe condition of the place he would have assumed any risk or danger attendant upon his going upon it. There is no pretense that appellant had knowledge of the unsafe condition of the place. He had a right to assume that the master had performed his duty of exercising ordinary care in making the place reasonably safe for the work, when he was directed to do the work. The danger was not obvious and appellant was not required to make an inspection where there was nothing to indicate that there was anything unsafe in the place. Having arrived at the conclusion that the principle, that requires the master to exercise ordinary care to provide the servant with a reasonably safe place in which to do his work, should be applied to the facts of this case, it follows that the appellee is liable in damages to appellant for the injury sustained by him on account of the unsafe condition of the place, if the appellee knew, or but for the failure to exercise ordinary care to provide a safe place, would have known of its unsafe condition.

The duty of the master to provide the servant a reasonably safe place in which to work, is one which he can not delegate to another, and thus escape the consequences of the failure to perform such duty. Hence, the contention, if true, that the bridgeway was improperly placed between the car and house by the negligence of a fellow servant of appellee does not excuse the appellee from the consequences of the negligence, as the fellow servant, who opened the car and fixed in the bridgeway was the agency by which the master prepared the place for the work to be done.

There was no assumption of risk of the unsafe condition of the place by the appellant, since the servant never assumes the risk of the negligence of the master in failing to provide a reasonably safe place for the servant to work, unless the assumption of such risk is embraced in the contract under which he is working. Covington Saw Mill & Mfg. Co. v. Clarke, 116 Ky. 461; C. & O. Ry. Co. v. Marcum, 136 Ky. 245; Eastern Ky. Home Telephone Co. v. Mellon, 116 S. W. 709; Clay City Lumber & Stave Co. v. Noe, 76 S. W. 195; Thompson on Negligence, 4 Sec. 3874; 26 Cyc. 1177; Breet v. L. & N. R. R. Co., 104 S. W. 961; 26 Cyc. 1097; Wilson v. Chess, etc., 117 Ky. 567; 26 Cyc. 1104; Conrad Tanning Co. v. Mensey, 25 R. 936; 26 Cyc. 1116; Crist v. Wichita Gas Co., 83 Pacific 199; Coffeyville Vitrified Brick Co. v. Shanks, 76 Pac. 856; Monongahela River, &c. v. Campbell, 25 R. 1599; Tradewater Coal Co. v. Johnson, 72 S. W. 274; 61 L. R. A. 161; Pitt's Admr. v. L. & N. R. R. Co., 9 R. 307; Ashland Coal, etc. Co. v. Wallace's Admr., 101 Ky 626: Kentucky Freestone Co. v. McGee, 80 S. W. 1113.

There being evidence which tended to prove that appellee had not exercised ordinary care to provide a reasonably safe place for appellant to work, and that such was the cause of his injury, the question of its negligence in that regard, as well as the other issues made in the case, should have been submitted under proper instructions, to the jury.

The judgment is reversed and cause remanded for proceedings consistent with this opinion.