R. A. KROMER v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.[1]

March 22, 1918.

No. 20,747.

**Master and servant — inspection of simple tools by master.**
    1. The rule that no duty rests upon an employer to inspect simple and common tools to discover defects which arise from the ordinary use of such instruments, followed.
**Same — steel wrench in use for two years.**
    2. The rule applies to a steel wrench furnished by the master, which was in good condition when furnished to the employee, and which had been used by the plaintiff, a skilled machinist, in a roundhouse for over two years.

Action in the district court for Pennington county to recover $15,000 for injuries received while in defendant's employ. The answer alleged

[1]Reported in 166 N. W. 1072.

the injury was caused by plaintiff's negligence and was due to risks which he had knowingly assumed. The case was tried before Grindeland, J., who denied motions for directed verdicts and a jury which returned a verdict for $1,000. Defendant's motion for judgment notwithstanding the verdict was denied. From the judgment entered pursuant to the order for judgment, defendant appealed. Reversed.

*John L. Erdall, E. M. Stanton* and *Charles Loring,* for appellant.

*Charles E. Boughton,* for respondent.

QUINN, J.

This action is brought to recover damages for injury claimed to have been sustained by the plaintiff while in the employ of the defendant as a machinist. A trial was had in June, 1917, resulting in a verdict for the plaintiff in the sum of $1,000. The defendant moved, upon a settled case, for judgment in its favor notwithstanding the verdict, which was refused. From a judgment thereafter entered against it, the defendant appealed.

The plaintiff is a skilled machinist, and for about 12 years had been employed in repairing locomotives for railroad companies. During the 3 years prior to his injury he was in the employ of the defendant, repairing locomotives in its roundhouse at Thief River Falls. In January, 1916, he was directed by the foreman to repair a certain locomotive which had a loose crosshead pin. He then requested his helper to bring the wrench for the crosshead. The tool referred to is a hexagon wrench made of heavy steel, is about 4 feet in length, weighs about 20 pounds and is used for the one purpose. On the outer end of the crosshead pin are 2 six-sided burrs about 4 inches in diameter. In making the repair, it was necessary to loosen the outer burr, which turns very hard. The helper brought the wrench, placed it on the burr, plaintiff took hold of the wrench, with the helper, and they gave it a hard pull for the purpose of loosening the burr. The wrench slipped off, the handle striking plaintiff's elbow, or crazy bone, on the right arm. The blow made his arm numb, and it remained lame for a number of days. About 4 weeks later he noticed that his right arm trembled, but he continued to work until April when he quit the employ of the defendant.

There is no dispute but that the tremor had gradually grown worse until, at the time of the trial, it affected the whole of the right arm, the muscles of the chest and the right leg, and he was suffering with what is known as paralysis agitans, or trembling palsy, which is incurable.

The plaintiff's claim is, that the disease which he has was induced or caused by the injury to his elbow, and that the injury was the result of the use of a defective and improper tool furnished him by the defendant with which to repair the locomotive referred to, the defect being that the wrench used was improperly constructed, in that it had an unnecessary offset in the handle which gave it a tendency to turn and slip off the burr when in use, and that the grasping part of the wrench had become worn and beveled, of which he had no knowledge, which also tended to cause the wrench to slip off the burr when in use.

It is the claim on the part of the defendant that the wrench was in proper repair when placed in the roundhouse for use some 3 years prior to the time of the alleged injury; that it was used but for one purpose and was the only one of its kind in the roundhouse, and when not in use it was kept in an open rack; that there were about 12 locomotives that entered this roundhouse for repairs; that there were some 5 or 6 skilled mechanics employed therein, including the plaintiff, whose duty it was to repair the locomotives; that it had always been the custom of the skilled workmen using the tools therein to take the same to the roundhouse blacksmith when necessary, and have them repaired; that the repair of crosshead pins was an almost daily occurrence, and that the wrench in question had been used almost daily by the machinists, including the plaintiff, for more than 2 years at the time of the alleged injury. About these contentions there seems to be no controversy. The defendant further claims that there was no person employed in the roundhouse charged with the duty of inspecting tools used by the skilled mechanics, but that it was the duty of such mechanics to see that the tools which they used were in repair before using the same; that the plaintiff assumed the risk of the injury alleged to have been sustained; that the wrench in question was a simple tool with no mechanism about it, and required no special skill in its construction or use; that the evidence fails to establish negligence on the part of the defendant, and that it does not appear that the disease from which the plaintiff is suffering was caused or brought about by the injury complained of.

It is argued that it was the duty of the defendant not only to furnish to the plaintiff a reasonably safe tool with which to work, but also to inspect the same from time to time while it was being used and remedy any defects which might be found to exist therein. It is too well settled to require a citation of authorities that: "When the appliances or machinery furnished employees are at all complicated in character or construction, the employer is charged with the duty of making such reasonable inspection as is necessary to detect defects. But the master is under no duty to inspect simple or common tools, or to discover or remedy defects arising necessarily from the ordinary use of such instruments." Koschman v. Ash, 98 Minn. 312, 108 N. W. 514, 116 Am. St. 373, and cases therein cited.

Under the rule, no liability rests on the master for the ordinary perils resulting from the use of common, simple tools, nor for those latent and usual defects or weaknesses, which, by reason of the character of the appliance, are presumed to be known to all men alike.

In the instant case, the wrench used was made from a flat piece of steel. The head, or grasping part, had a flat face, was about ¾ of an inch thick, 6 inches in diameter, with a hexagonal hole through the center to fit the burr on the crosshead pin. In the handle about 4 inches from the grasp was an offset of about one inch. In loosening the burr on a crosshead pin the wrench is used in much the same manner as an ordinary iron wrench in loosening a burr to remove a wheel from a carriage. It is just as simple, the difference being in the size of the wrench, which does not, under the authorities, take it out of the category of simple tools. Koschman v. Ash, supra. The tool was simpler than an ordinary monkey wrench, which is classed as a simple tool. Stork v. Charles Stolper Cooperage Co. 127 Wis. 318, 106 N. W. 841, 7 Ann. Cas. 339. The wrench being a simple tool, the servant using the same is deemed to have assumed all the risk incident to its use.

It is clear that the plaintiff was perfectly familiar with the particular tool in question. He was a skilled mechanic, had used the wrench almost daily for over two years. The defects consisted of the worn and beveled edge of the grasping part of the wrench, open and visible. If the plaintiff had looked at the face of the wrench, he could have hardly avoided observing the defect. It was plaintiff's duty to inspect the

wrench and have it repaired if he found it in bad condition. Wachsmuth v. Shaw Electric Crane Co. 118 Mich. 275, 76 N. W. 497.

The plaintiff having assumed the risk incident to the use of the tool in question, and the defendant being without negligence, it becomes unnecessary to consider the other questions involved.

Judgment reversed.