ARKANSAS CENTRAL RAILROAD COMPANY *v.* GOAD.

Opinion delivered November 18, 1918.

1. MASTER AND SERVANT—DEFECTIVE TOOL—QUESTION FOR JURY.— Where there was evidence tending to prove that plaintiff was injured by the defective condition of a lining bar used in raising railroad ti᷉ for the purpose of spiking the rails to the ties, the

question whether a lining bar was a simple instrument which it would be the duty of the servant, and not of the master, to inspect was for the jury.

2. TRIAL—ARGUMENT OF COUNSEL.—Where counsel in argument criticized the testimony of certain medical experts, and mentioned an instance within his observation of mistaken diagnosis by physicians, and upon objection to such argument the court told the jury that what occurred in another case could only be considered as a matter of argument, *held* that the error, if any, was cured by the court's instruction.

Appeal from Logan Circuit Court, Northern District; *James Cochran,* Judge; affirmed.

*Thos. B. Pryor,* for appellant.

1. The court erred in refusing to give the peremptory instruction requested by defendant. No negligence was proven. It was a *simple tool,* and no duty of inspection rested on the company. Any defect was open and obvious, and appellee assumed any risk of injury. 83 N. E. 353; 88 Ark. 36; 108 *Id.* 383; 4 Thompson on Negl. (2 ed.), § 4708; 1 Labatt on Master & Servant, 331, § 154; 82 S. W. 1026; 130 Ark. 486; 141 Ky. 40; 127 Pac. 474.

2. Plaintiff assumed the risk as this case was tried under the Federal Employment Act. 233 U. S. 492; 3 Elliott on Railroads (2 ed.), § 1278; 94 Wis. 596; 35 Ark. 616.

3. There is error in the instructions given and refused. They are abstract, and there was no proof of negligence. 108 Ark. 383.

4. The court erred in permitting counsel Evans to impeach the testimony of Doctor Benefield and Doctor Southard in his closing argument. 125 Ark. 319.

*Evans & Son, R. J. White* and *Sid H. White,* for appellee.

1. The tool was not a common or simple tool. But the "simple tool" has never been recognized in this State. 130 Ark. 486; 107 *Id.* 512.

2. Appellee did not assume the risk. Negligence and failure to inspect the tool was shown. 107 Ark. 512.

A servant is not bound to search for dangers. He has a right to rely on the judgment and discretion of the master. 77 Ark. 367; 89 *Id.* 424; 48 *Id.* 333.

3. There is no error in the instructions.

4. Judge Evans' remarks were justified and legitimate argument. 125 Ark. 319. But any prejudice was fully eliminated by the admonition of the court.

5. The instructions state the law. 58 U. S. (Lawy. Ed.), 521-4; 8 Thompson on Negl., § 3986; 88 N. E. 1124; 40 L. R. A. (N. S.), 832.

6. Review cases cited for appellant and contend they do not apply here. 107 Ark. 512-515; 108 *Id.* 377; 130 *Id.* 486. Appellant failed in its duty as the jury found.

HUMPHREYS, J. Appellee recovered a judgment for the sum of $1,250 to compensate the damages resulting from an injury sustained while working as a section hand for the appellant company (hereinafter referred to as the company). He predicates his right to recover damages upon the alleged negligence of the company in furnishing him a defective tool with which to perform his duties. This tool was a lining bar, and appellee described it and the manner of his injury as follows: The bar was about five or six feet long, with a small tip at the lower end, and at the bottom end there is a knuck on the under side. A new bar has a long tip on top and turns up a little at the end. In its use, the bar would be placed under the end of a tie and the knuck rested on a fulcrum. The ties were lifted up or nipped, so that the coemployees could spike the rails to the ties. That the bar furnished him was worn on the end which was properly inserted under the tie, and the knuck was worn until it was round, when it should have been flat. That, after putting the bar in position, he put all his weight on it and lifted up the tie supporting the rail, and the bar slipped, and he fell heavily a distance of three or four feet to the ground against a track jack, and sustained an injury to his side which developed into traumatic pneumonia. That the point of

a new bar is sharp and square, whereas the point of the bar furnished him was blunt, and its knuck, instead of being flat, was round, and this worn and defective condition caused the bar to slip, whereas, but for the defect set out, it would not have slipped.

By way of defense to the suit, it was answered that the tool furnished was one of a nature so simple and so durable that no duty of inspection existed, and that any defect which might have developed through use would have been so open and obvious that appellee must be held to have assumed any risk of injury arising out of its use.

A large number of instructions were given, and several were refused, but no objection is pointed out to the instructions given except that they were abstract, the basis of this objection being that the court should have held as a matter of law that no liability was shown. The instructions given appear to fully and fairly cover the law of the case, and we have concluded that no error was committed in refusing any of the instructions asked by the company, for the reason that the instructions given correctly declare the law applicable to all the issues raised by the testimony. The ground for reversal chiefly insisted upon is that no instruction would have been proper except a direction to return a verdict in favor of the company, and, while we regard this as a close question, we think the case should have gone to the jury and that the testimony is legally sufficient to sustain the verdict.

Appellee had had several years' experience as a section hand, but had worked as a section hand for the company only a few days, and had only assisted in nipping four or six ties, which had required about thirty minutes, and during this time had not observed the worn condition of the bar. Only two bars were furnished for the use of the entire crew, and, after his injury appellee observed the defective and dangerous condition of the bar he had been using, and compared it with the other bar, and found that the other was not so badly worn. It was also shown that these bars had been in continuous use for a period of more than twenty years, during all of which time they

had never been inspected or repaired. It was testified to, however, on behalf of the company that the bars were practically indestructible and could be safely used for the purposes for which they were intended by the exercise of ordinary care on the part of the workman, and that no one had ever been hurt before or since in the use of the bar that injured appellee or of similar bars. It is also very earnestly insisted that appellee's attack of pneumonia was not attributable to his injury, and two doctors so testified. It was shown that, after his injury, appellee continued at work during the remainder of the day and for a period of an hour and a half, and two doctors expressed the opinion that a man who had sustained a fall of sufficient force to produce pneumonia would be unable to continue his work. Appellee testified that, although he did work for the remainder of the afternoon, the pain increased in severity until finally, at quitting time, he felt as if something were tearing loose from his side. It was also shown that pneumonia was prevalent in that vicinity, and that three occupants of the house in which appellee resided had pneumonia at about the time of appellee's injury. Another physician, however, testified that he called upon and examined appellee at his home and the nature of his injury, but the examination was not satisfactory, because of the imperfect light at the house and because of appellee's sensitiveness to the touch. That appellee complained of an excruciating pain in his left side, and the whole lung became involved on the night of the second day after the injury. When this doctor first examined appellee, he applied straps to bring him to immobility, although at the trial he expressed the opinion that no ribs were broken. This statement of the physician was severely criticised by counsel for appellee in his closing argument to the jury, and, in the same connection, counsel criticised the testimony of the other two physicians, and, in the course of this criticism said: "Why, gentlemen, I happen to know of a case of a lawyer, Mr. Arch Jacobs, getting hurt in a railroad accident, and came on down to Booneville and tried some lawsuits. He

did not know he was hurt, and in three or four months he died.'' Upon objection of counsel for the company to this statement, the court, in overruling the objection, and over the further objection of counsel for the company, stated to the jury: ''What occurred in another case, could only be considered by you as a matter of argument which should not be considered in any event in any other light.''

Counsel for the company invokes what is commonly called the simple tool doctrine, and cites in his brief cases from other courts holding that certain tools are of a nature so simple as that no duty of inspection or repair is due the servant from the master, and we are asked to say as a matter of law that the lining bar which appellee was using at the time of his injury was a tool of this character. We are unable, however, to accept this view. We said in the case of *Arnold* v. *Doniphan Lbr. Co.,* 130 Ark. 486, that the simple tool doctrine, as such, had never had recognition by this court, and in the case of *C., R. I. & P. Ry. Co.* v. *Smith,* 107 Ark. 512, we said that no hard and fast rule could be laid down by which the courts could determine in a given case whether or not an appliance or tool furnished a servant for his use was of a nature so simple that the master, exercising ordinary care in furnishing his servants reasonably safe tools with which to perform their work, should have inspected it. We think the case of *Railway Company* v. *Smith, supra,* is similar in principle to the instant case, and announces the doctrine which is controlling here. That was a case in which the defective tool was a hammer, and it was there insisted (as here insisted) that no duty of inspection was owing to the servant. We there said that, ''Neither can we say, as a question of law, that under all the facts and circumstances adduced in evidence that an unskilled laborer of ordinary intelligence should have known that the hammer was defective and should have known and appreciated the dangers that he was exposed to by reason thereof.'' We think the doctrine of that case is conclusive also of the question of assumption of risks. It was insisted

there, as it is here, that any defect, if one existed in the hammer, was so open and obvious as that the defect must immediately have been observed by the servant, but it was there stated: "It can not be said, as a question of law, that the defect in the face of the hammer was so open and obvious that they (the servants) could have seen the defect by a glance or by such casual observation as it would be natural for plaintiff to make while carrying the hammer to Blackman, or by Blackman to have made after receiving it."

We conclude, therefore, that the court properly submitted to the jury the questions both of negligence on the part of the master in furnishing a defective tool and that of the assumption of risks on the part of the servant in using it.

We think no prejudicial error calling for a reversal of the case was committed by counsel in the argument set out above, and that, insofar as the argument was an improper one, it was cured by the admonition of the court. Counsel was merely illustrating the point he was attempting to make, that doctors could be mistaken, and the court told the jury that the argument could be considered only as an illustration.

Finding no prejudicial error, the judgment of the court below is affirmed.

SMITH, J., dissents.