The plaintiff claims, in the first cause of action in his complaint, that on the 14th day of November, 1921, he sold and delivered to the defendant certain personal property described in the complaint, of the reasonable value of $7539.00. In his second cause of action he claims that during the year 1921 he summer-fallowed 350 acres of land of the value of $1050.00. In his third cause of action he claims that the defendant owes him the sum of $150.00 for board. In his fourth cause of action he alleges that the plaintiff collected, during the years of 1920 and 1921, hail insurance in the sum of $1126.00 upon lands which the plaintiff claims to have farmed for the defendant and that he is entitled to one-half of the said amount, amounting to $563.00, with interest. In his fifth cause of action he alleges that the defendant is indebted to him for six teams of horses which he claims to have furnished to the defendant for work on a threshing rig in 1921 for 18 days, at the rate of $2.00 per day per team, and he asks judgment against the *Page 748 
defendant for the sum of $7539 with interest at 6% from the 14th day of November, 1921; for $1050 with interest at the rate of 6% from the 1st day of September, 1921; for the sum of $150 with interest at the rate of 6% from the 1st of November, 1921, and for the sum of $563 with interest at the rate of 6% from January 1st, 1921, and for the sum of $91.00 with interest at 6% from November 1st, 1921.
The defendant answers claiming that there was a full and complete settlement and an adjustment of all claims of every name, nature and description between the plaintiff and defendant on the 14th day of November, 1921; and that all the goods, wares and merchandise set forth in the first cause of action were transferred to the defendant by the plaintiff by a bill of sale; that on said date the plaintiff was indebted to the defendant in large sums of money exceeding the value of the property and for and in consideration of the defendant's release of claims against the plaintiff and assuming and paying the claims of certain other parties and persons agreed upon between plaintiff and defendant, such settlement and transfer of all property was made.
At the close of the testimony the plaintiff dismissed the fourth cause of action, relating to hail insurance, and on motion of the defendant the second cause of action, relating to summer-fallowing, was dismissed. A motion to dismiss the fifth cause of action was denied and a motion to dismiss the entire and all the causes of action was denied. A motion to strike out all the testimony in reference to bundle oats or value thereof was denied. The defendant then moved for a directed verdict which was denied.
The court submitted to the jury the claim of the plaintiff for six teams of horses for 18 days at $2.00 per day, 100 bushels of oats, 35 chickens, one manure spreader, 7 pigs, and 15 loads of oats bundles. The jury returned a verdict for the plaintiff and against the defendant for the sum of $600.00. Thereafter on notice a motion was made for judgment notwithstanding the verdict or for a new trial, which motion was also denied and the defendant appeals to this court from the judgment and order denying defendant's motion for judgment notwithstanding the verdict or for a new trial and specifying as errors the overruling of the defendant's motions to dismiss and his objections to, and motions to strike out, testimony.
The evidence shows that on the 5th day of January, 1917, the *Page 749 
plaintiff and the defendant signed a lease by the terms of which the plaintiff agreed to farm for the defendant 800 acres of land in the county of Burke and state of North Dakota for the years 1918, 1919, 1920, 1921, and 1922. At the same time defendant sold and delivered to the plaintiff horses and machinery amounting to $5,600 and paid to the defendant $3,225.00. Under and by the terms of said contract the plaintiff farmed the lands during the years 1918, 1919, 1920, and 1921. On the 22nd day of September, 1921, there was a settlement between the plaintiff and the defendant in which it was found that the plaintiff owed the defendant $6,574.82. A note was given for the amount and it was secured by a chattel mortgage, Exhibit "5." In November of the same year, the plaintiff states in his testimony, he had no money and being unable to go on with his contract he and his brother-in-law went to the defendant and told defendant that if he would give him back all his paper and assume certain indebtedness that he would turn the farm and stock all back to the defendant; that he could not farm it any longer. Defendant said "all right" but wanted him to say so in front of witnesses. The plaintiff says repeatedly that the defendant promised to have a subsequent settlement but he also states repeatedly that, before the defendant would return his paper and agree to guarantee the payment of some $1,700 that the plaintiff owed on machinery, he insisted on having everything on the farm turned over to him and the witness says that he understood that everything was to be turned over to the defendant at the time he signed the bill of sale and when the plaintiff left the farm he left everything there and later brought this action against the defendant claiming that certain personal property left on the place was not included in the bill of sale although he admits that the defendant demanded all of it and insisted on getting all of it before he would sign the guarantee and return the papers. After the bill of sale was executed the defendant turned over to the plaintiff his personal note for $6,574.82 and a guarantee that he would assume and pay certain debts of the plaintiff amounting to about $1700. The plaintiff claims that he left a manure spreader, 7 pigs, 100 bushels of oats in bin, 15 loads of oats bundles, and 2 bundles of wire on the farm that were not mentioned in the bill of sale. But all of this property was on the place when the defendant demanded, and received, `all of the property' and it was on the place on the 22nd day of September when the plaintiff *Page 750 
executed the chattel mortgage to secure the $6,574.82, and is specifically mentioned in the mortgage.
Since the defendant demanded "all the property" before he would turn over the note and mortgage, and sign the guarantee, everything upon the place was a part of the consideration for releasing the plaintiff from his farming contract, for returning his note and guaranteeing the payment of some $1700 of other debts, and while the bill of sale does not specifically mention the manure spreader, it does say "all tools on the premises of every name and nature."
Webster's Dictionary defines "tool" as follows:
"An instrument of manual operations, as, a hammer, saw, plane, file or the like, used to facilitate mechanical operations as distinguished from an appliance moved and regulated by machinery; any instrument used by a craftsman or laborer at his work; implement. In a wide sense `tool' may be used to include almost any implement or object used in performing an operation or carrying on work of any kind, especially where the implement or object is used or worked by hand and is movable, as distinguished from power-driven machinery, etc. In this use, as in statutes exempting instruments of earning a livelihood, in engineering contracts, etc., `tool' has been held to designate books, a horse and wagon, a piano, a hand-(or foot-) power printing press, a sewing-machine, a floating piledriver and a scow. In law, any instrument or appliance necessary to a person in the efficient prosecution of his trade or calling, according to the regular decisions, the tools of a mechanic include anvils, vices, saw-horses, a barber's chair and mirror, a photographer's head-rest and, in certain cases, a doctor's equipage are tools necessary in their respective callings."
The term "tool" includes a sewing-machine. Rayner v. Whicher, 6 Allen, 292. It includes a press and paper cutter owned by a job printer and necessary for his business. St. Louis Type Foundry v. Taylor, (Tex. Civ. App.) 35 S.W. 691. The safe used by a jeweler and watchmaker. Re McManus, 87 Cal. 292, 10 L.R.A. 567, 22 Am. St. Rep. 250, 25 P. 416. A sled used in drawing wood and timber is a tool of his occupation. Parshley v. Green, 58 N.H. 271, 272. A piano is a tool necessary to a music teacher. Amend v. Murphy,69 Ill. 337.
We are of the opinion that under the evidence in this case the manure spreader is covered in the clause in the bill of sale "all tools on the *Page 751 
premises of every name and nature" and that the court erred in not sustaining the objections of the defendant to the introduction of the testimony in relation to the manure spreader.
The plaintiff also claims that there were 1500 bushels of oats in the bin and that the bill of sale only covers 1400 bushels of oats and he asked for the value of 100 bushels of oats. He testifies, however, that the oats was all in one bin and that when the defendant was demanding everything that was on the place that they estimated the oats in the bin at 1400 bushels and that the bill of sale covered all the oats in the bin. He says he never measured the oats but he thought that by weight there would be 1500 bushels and that is the basis of his claim. From the plaintiff's own testimony it appears that the oats in this bin were all turned over and was a part of the consideration of the settlement. He also says he turned over 15 loads of oat bundles. The court asked him why they were not threshed. He answered: "Because they were going to be fed to the cows through the winter." He is then asked, — "As hay, wasn't it?" He answered, "Yes." This was a part of the feed or hay to be fed to the cows during the winter and the bill of sale specifically says, "all hay and straw on the premises owned by the second party." (The defendant being the second party and this property all being on defendant's land.) The court erred in overruling defendant's objection to the testimony in relation to the hay.
The plaintiff claims that he furnished to the defendant 6 teams of horses on a threshing rig in 1921 for a period of 18 days at $2.00 per day but later, in his testimony, he admits that the defendant did not hire the teams from him but that they were hired by a Mr. Watson who has purchased the threshing rig from the defendant and was running it under his own supervision. Mr. Watson paid the plaintiff $60.00 on account of the work of said horses and the testimony does not show that the defendant was obligated in any way to pay for the use of the horses on the threshing rig owned and operated by Watson. The defendant, however, owed Watson for threshing and the plaintiff owed his brother-in-law Conrad Berg the sum of $130.00 on a mechanic's lien and by mutual agreement the defendant, instead of paying Watson for the threshing, paid Conrad Berg $130.00, the amount of his claim against the plaintiff and for which he claimed a lien. The plaintiff states in his testimony that this arrangement was made after the defendant *Page 752 
had taken all the stuff back and again states that it was after the threshing was done and the threshing rig had been pulled in. It is quite clear that the defendant is not liable to the plaintiff in any sum whatever in connection with the hiring of the teams for work on the threshing rig and the court erred in overruling the defendant's objections to the testimony.
For the errors specified the judgment of the lower court is reversed and a new trial granted.
CHRISTIANSON, Ch. J., and JOHNSON, BIRDZELL, and NUESSLE, JJ., concur.