232 P.2d 689

**ROWLAND v. REYNOLDS ELECTRICAL ENGINEERING CO. et al.**

No. 5388.

Supreme Court of New Mexico.

June 13, 1951.

Joseph L. Smith, Lorenzo A. Chavez and Dale Walker all of Albuquerque, for appellant.

C. Vance Mauney and Simms, Modrall, Seymour & Simms, all of Albuquerque, for appellees.

COMPTON, Justice.

This is a proceeding under the Workmen's Compensation Act. The claimant appeals from a judgment denying total permanent disability, plus 50 per cent additional compensation by reason of the failure of the employer to provide reasonable safety devices as required by the Act.

On May 24, 1949, the claimant, an employee of the Reynolds Electrical Engineering Co., while engaged in connecting several lengths of three inch pipe to be used in encasing conduit, sustained an injury to the middle finger of the left hand. Previously, he had screwed the pipe together by hand but it was necessary to employ additional pressure to insure a better fitting connection. To do so an eighteen inch Rigid wrench was used. While he was thus engaged, the wrench slipped and the middle finger of the left hand was crushed. Immediately thereafter, appellant was given medical attention and was hospitalized at the Womens' and Childrens' Hospital in Albuquerque, New Mexico, at the expense of the employer.

At the time of the injury, claimant was receiving approximately $100 weekly. Shortly thereafter, he resumed his employment with the company at the regular

salary but on a lighter job, one devised to protect the injured finger. Continuing his services with the company, on September 10, 1949, infection having developed, it became necessary to amputate and remove the metacarpal bone of the second finger of the left hand. He was off work again for a·short while but did not require hospitalization. The parties are in accord that claimant is entitled to compensation for the loss of the second finger and the metacarpal bone. Judgment in his favor, for $500,. the statutory schedule, is not questioned. The case was tried to the court and findings pertinent to a decision are:

"1. That claimant suffered an injury to the second finger of his left hand while acting within the scope of his employment for employer on the 24th day of May, 1949.

"2. That employer afforded prompt and skilled medical and surgical attention for claimant and provided hospitalization for claimant at the Womens' and Childrens' Hospital and assumed and paid the fees of Dr. L. G. Rice, Jr., for a traumatic amputation of the terminal phalanx, second finger left hand, all in the sum of $98.94.

"8. That claimant is not totally and permanently disabled as a proximate result of injuries sustained by him on May 24, 1949.

"9. That defendant employer had available for use by claimant and furnished to all of the electricians wrenches and other tools of proper size and dimensions for use upon the job then being performed by claimant.

"10. That an eighteen inch Rigid Wrench is not adequate and is unsafe to use for connecting three inch pipe.

"11. That defendant employer did not fail to provide claimant with safety devices in general use in the electrical contracting industry for the use and protection of electricians.

"12. That the defendant employer by the term of a written contract agreed to furnish proper tools in general use for the use, benefit and protection of claimant and all other electricians.

"13. That at the time of claimant's injury defendant employer hired and had on its payroll a foreman, one of whose duties was to aid the electricians and other workmen on the job in locating tools furnished by employer.

"15. That claimant failed to request or inquire into the whereabouts of wrenches and other tools of adequate size with which to complete the job upon which he was engaged at the time of the injury.

"16. That because of claimant's failure to use a proper sized wrench in the work in which he was engaged, the second finger of his left hand was badly crushed. '

"17. That claimant has been working continously except for six days following the accident and seven days beginning on September 9, 1949, when the metacarpal bone of his second finger left hand was removed.

"18. That claimant has worked as a foreman since the time he returned to work after the injury occurred.

"20. That claimant has not suffered a decreased or lowering of his wages since the time of his injury.

"22. That claimant's disability is limited to the left hand and extends no further than the point where the metacarpal bone of the second finger left hand was amputated.

"23. That claimant's earning capacity has in no way been lessened by the accident and his resultant injury.

"24. That claimant will continue to be able to perform the duties of an electrical work foreman."

The court then concluded as follows:

"1. That the injuries to claimant did not result from the failure of employer to provide the safety devices required by law or. in general use in the industry in which claimant was working, i. e.; the electrical industry, and claimant is not entitled to an increase of fifty per cent of his compensation as provided for in Section 57–907 NMSA 1941 Comp.

"2. That claimant was guilty of contributory negligence in the premises and is barred from recovery of the fifty per cent in addition as provided in Section 57–907 NMSA 1941 Comp.

"4. Claimant is suffering only from the loss of use of the second finger of his left hand and is entitled to compensation as provided in the schedule of Section 57–918 NMSA 1941, as amended.

"5. That under the provisions of Section 57–919 NMSA 1941 the liability of the employer or insurer as regards medical services is limited to furnishing all reasonable medical services and that under said limitation employer and insurer discharged their duty by furnishing to claimant the services of Dr. L. G. Rice, Jr., and hospitalization at the Womens' and Childrens' Hospital, Albuquerque, New Mexico.

"10. That wrenches and tools of proper size for the performance of the duties of an electrician are not safety devices within the meaning of Section 57–907 NMSA 1941 in general use in the electrical industry in which safety devices are not specifically provided by statute."

The first question presented is whether claimant is totally and permanently disabled within the meaning of the Workmen's Compensation Act. There is a sharp conflict in the evidence. On the one hand there is evidence that claimant is suffering from permanent neuroma, limitation of

motion in index finger, sensitivity and pain at the point of amputation radiating throughout the hand, loss of grasp and a phantom limb. There is also the evidence of a medical expert, Dr. Edward Parnell, who testified as follows:

"Q. Doctor, are you prepared to give an opinion as to whether or not the injury that Mr. Rowland has received, has resulted in any permanent disability to his body as a whole? A. Well, there is nothing affected above his wrist, his trouble stops at his wrist, if you want to put it that way. I mean—

"Q. (By Mr. Horn) Are you able to say whether or not he has reached his maximum recovery at the present time, doctor? A. Well, I am assuming that he has. However, I do think that the tenderness, extra sensitivity has a good chance to diminish, it will not increase.

"Q. Did Mr. Rowland state whether or not he had been working regularly to you, doctor? A. Yes, he said that he went back to work, he worked some in between the two amputations but after the last amputation he said he went back to work about seventeen days later and that he'd been working steadily since that time but that he hadn't done as heavy of work as he had done before.

"Q. You said his disability ceased at the wrist. A. I said that for the purposes of argument.

"Q. We are not arguing, doctor.

"The Court: Let him answer.

"A. That is, disability could be considered within his hand, that he had no disability in his forearm, none in his upper arm, none in the body. You see what I mean?"

■ The testimony of the expert plus the fact that claimant, except for a few days following each operation had returned to work, was working at the time of the trial and was earning substantially the same amount he was receiving prior to the injury, warranted the court in finding that claimant was not totally and permanently disabled. The findings of the trial court, supported by substantial evidence, will not be disturbed by this court. Flippo v. Martin, 52 N.M. 402, 200 P.2d 366.

The next question is whether wrenches, such as those furnished by the employer and used by electricians, are safety devices within the meaning of the act. The applicable portion of the act, reads: "In case an injury to, or death of a workman results from his failure to observe a statutory regulation appertaining to the safe conduct of his employment, or from his failure to use a safety device provided by his employer, then the compensation otherwise payable under this act (§§ 57-901—57-931) shall be reduced by fifty per centum (50%). In case an injury to, or death of, a workman results from the failure of the em-

ployer to provide the safety devices required by law, or in any industry in which safety devices are not provided by statute, if an injury to, or death of, a workman results from the negligence of the employer in failing to supply reasonable safety devices in general use for the use or protection of the workman, then the compensation otherwise payable under this act (§§ 57-901—57-931) shall be increased by fifty per centum (50%). * * *" Section 57-907, 1941 Comp.

■ The trial court found that ordinary hand tools such as wrenches used in the performance of the duties as electricians and as used by appellant, are not safety devices. "The usual meaning of the word 'tool' is 'an instrument of manual operation;' that is, an instrument to be used and managed by the hand instead of being moved and controlled by machinery. Lovewell v. Westchester F. Ins. Co., 124 Mass. 420, 26 Am.Rep. 671; Anderson v. Hanson, 52 N.D. 746, 204 N.W. 669, 670; Murphy v. Continental Ins. Co., 178 Iowa, 375, 157 N.W. 855, 857, L.R.A. 19–17B, 934; Reffitt v. Southern Sheet & Tin Plate Co., 170 Ky. 362, 186 S.W. 155, 157." Black's Law Dictionary, Third Edition, p. 1738.

The author, at the same page, also defines the words "simple Tools" as follows: "In law of Master and Servant. A simple tool is one whose condition can be seen at a glance, or by slightest inspection. Track wrench used to tighten and loosen nuts on railroad track held 'simple tool.' Allen Gravel Co. v. Yarbrough, 133 Miss. 652, 98 So. 117, 118; Arkansas Cent. R. Co. v. Goad, 136 Ark. 467, 206 S.W. 901, 902; Swaim v. Chicago, R. I. & P. Ry. Co., Iowa, 170 N.W. 296, 299; Fordyce Lumber Co. v. Lynn, 108 Ark. 377, 158 S.W. 501, 503, 47 L.R.A., N.S., 270; Wisconsin & Arkansas Lumber Co. v. Ashley, 158 Ark. 379, 250 S.W. 874, 875; Southern Ry. Co. v. Hensley, 138 Tenn. 408, 198 S.W. 252, 253; Knapp v. Holden, 34 Ohio Cir.Ct.R. 415, 416; Kolasinski v. Chicago, M. & St. P. Ry. Co., 164 Wis. 50, 159 N.W. 563; Santa Fe Tie & Lumber Preserving Co. v. Collins, Tex.Civ.App., 198 S.W. 164, 166; Randall v. Gerrick, 104 Wash. 422, 176 P. 675, 676; Missouri K. & T. Ry. Co. of Tex. v. Odom, Tex.Civ.App., 152 S.W. 730, 732; Hoskins v. Louisville & N. R. Co., 167 Ky. 665, 181 S.W. 352; Laurel Mills v. Ward, 134 Miss. 447, 99 So. 11, 12; J. H. W. Steele Co. v. Dover, Tex.Civ.App., 170 S.W. 809, 811; Kromer v. Minneapolis St. P. & S. S. M. Ry. Co., 139 Minn. 424, 166 N.W. 1072, 1073; Ronconi v. Northwestern Pac. R. Co., 35 Cal.App. 560, 170 P. 635, 636."

In the case of Cole v. List & Weatherly Const. Co., La.App., 156 So. 88, 89, the plaintiff was using a wooden ladder to aid him in reaching concrete tiers where he was engaged in carpenter work. He dispensed with the ladder and climbed upon timbers

from which he fell sustaining injuries to his arm. The Louisiana statute (1914) Act 20, Section 28, L.S.A.-R.S. 23:1081, reads:

" 'Be it further enacted, etc., that no compensation shall be allowed for an injury caused * * *

" '(3) By the injured employee's deliberate failure to use an *adequate guard or protection* against accident provided for him. * * *

" '2. In determining whether or not an employer shall be exempt from and relieved of paying compensation because of injuries sustained by an employee for the causes and reasons set forth in this Section, the burden of proofs shall be upon the employer.' "

The court in disposing of the case said: "In applying the rule that the provisions of the Compensation Act are to be construed liberally, we think resort should be to common sense and not fine distinctions. In the common acceptance of the term, *a ladder is not a guard or protection.*" (Emphasis ours)

In the case of Montgomery Ward & Co. v. Snuggins, 103 F.2d 458, 462, the Circuit Court of Appeals, Eighth Circuit, in footnote No. 3 of the opinion stated: " 'A stairway is not a ladder, nor a ladder a stairway. A stairway appertains to architecture. It has various technical parts consisting of risers, treads, nosings, fliers, and winders. It is stationary. A ladder *is in the nature of a tool,* is a frame, usually portable, of wood, metal, or rope, * * *.' Davis v. Buss Mach. Works, 169 Mich. 498, 135 N.W. 303." (Emphasis ours)

Similarly, in Sheridan v. Gorham Mfg. Co., 28 R.I. 256, 66 A. 576, 577, 13 L.R.A., N.S., 687, the plaintiff, an electrician and an employee of defendant, was using a defective ladder in the course of his employment. He fell therefrom and sustained an injury. The court said: "It has been repeatedly held that an ordinary ladder, such as was used in the case at bar, is to be classed with other ordinary 'hand tools,' and so that the servant using a ladder in the course of his usual employment is chargeable, equally with the master, with knowledge of its obvious imperfections. Thus it was said in Cahill v. Hilton, 106 N.Y. 512, 518, 13 N.E. 339, 341, as follows: '*A ladder, like a spade or hoe, is an implement of simple structure,* presenting no complicated question of power, motion, or construction, and intelligible in all of its parts to the dullest intellect. No reason can be perceived why the plaintiff, brought into daily contact with the tools used by him, as he was, should not be held chargeable, equally with the defendants, with knowledge of their imperfections.' * *" (Emphasis ours).

See also: Thwaits v. Kennecott Copper Corporation, Chino Mines Division, 52 N.M. 107, 192 P.2d 553; Flippo v. Martin, supra; Jones v. International Minerals & Chemical Corporation, 53 N.M. 127, 202 P.2d 1080.

But we do not find it necessary to determine the question and it will be left open to be decided when the occasion arises. The trial court specifically found that the employer furnished all necessary wrenches and tools for the safety of the workmen. This finding has support in the evidence. Shortly before the injury, the employer had purchased six of all sizes of wrenches larger than eighteen inches. On the particular job there were about forty workmen and these wrenches were scattered about the premises and were being used by the workmen and were available to all, including claimant. Moreover, a foreman was present at all times whose duty among other things was to furnish proper wrenches upon request. Claimant was aware of the danger attending the use of an eighteen inch wrench yet failed to use or call for the proper size.

The further claim is made for medical, surgical, X-ray and hospital expense incurred by appellant in addition to the services rendered and paid for by the employer. This was an issue in the lower court. The court found that the employer afforded the necessary medical and surgical skill and that appellant made no demand for additional services. These findings are supported by substantial evidence and must be sustained.

The point is made that the court erred in awarding a lump sum settlement of $500 and in awarding attorney fees directly to appellant's attorney. It is the duty of the employer to pay compensation at regular intervals, not more than sixteen days apart, Section 57–918, 1941 Comp., and attorney fees are payable to the claimant. La Rue v. Johnson, 47 N.M. 260, 141 P.2d 321. Nevertheless, such irregularity is not reversible error.

A fee, in addition to the amount allowed by the trial court, is claimed by appellant for his attorney in prosecuting this appeal. The allowance of attorney fees is limited to recovery of compensation, Section 57–923, 1941 Comp., and appellant having failed to sustain his claim, this court finds itself without discretion in the matter of fees.

The judgment will be affirmed and it is so ordered.

LUJAN, C. J., and SADLER and McGHEE, JJ., concur.

COORS, Justice, not participating.